In the Matter of the Petition of THE ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK, NEW YORK COUNTY LAWYERS' ASSOCIATION and BRONX COUNTY BAR ASSOCIATION for an Inquiry by the Court into Certain Abuses and Illegal and Improper Practices Alleged in the Petition.

First Department, February 7, 1928.

**Attorney and client — disciplinary proceedings — petitions by bar associations of New York city to Appellate Division, First Department, to investigate illegal practices — court has power to direct general investigation, under Judiciary Law, § 88, subds. 2, 5 — court has inherent power to investigate illegal practices by attorneys — court may make investigation itself or through its own nominee — court has power to instigate investigation of its own will — prayer of petitioners is granted — investigation will be made by justice of Supreme Court sitting at Special Term, assisted by counsel furnished by petitioners and will include illegal practice of " ambulance chasing," illegal practices by attorneys for defendants in negligence cases, and all other questions of illegality in practice which may develop on investigation.**

The bar associations of the city of New York presented petitions to the Appellate Division of the First Department, and asked that an investigation be made into certain illegal practices known as " ambulance chasing," and that all parties found to have participated in such illegal practices be brought into court and dealt with according to law.

The Appellate Division has the power to direct the investigation asked for in the petition as a necessary corollary of the powers expressly conferred upon the Appellate Division by subdivisions 2 and 5 of section 88 of the Judiciary Law. Furthermore, the Appellate Division has the inherent power to conduct an investigation into illegal practices by attorneys for the purpose of disciplining those who may indulge in such practices.

The disciplinary power of the Appellate Division is not merely passive, but may be exercised by the court on its own motion. Nor is it limited merely to those cases where specific charges are preferred against individual attorneys. But the Appellate Division has the power to act itself or through its nominee whenever it has probable cause to believe that professional misconduct has occurred irrespective of whether that misconduct be by a single respondent or by a particular class.

The fact that no precedent exists in this State for such an investigation is no answer to the prayer of the petitioners, for the jurisdiction of the courts, in so

far as not restrained by statutory or constitutional limitations, must adapt itself by new remedies to new conditions.

The prayer of the petitioners is granted and an investigation is ordered into the abuses stated in the petition, which investigation will be conducted by a justice of the Supreme Court sitting at Special Term with full power to summon witnesses and to compel the giving of testimony as well as the production of books and papers. But the petitioners are required to agree upon and furnish one or more counsel to aid in the conduct of the investigation.

Such investigation is to extend, not only to the practice of " ambulance chasing," as stated in the petition, and to the conduct of attorneys and their employees claimed to be engaged in such practices, but will extend to any unlawful practices used by attorneys or their agents in the collection or presentation of evidence and in the settlement of cases, as well as to the office methods used by them. The investigation shall also extend to practices used by attorneys for defendants in negligence cases, whether the personal attorneys of such defendants or the attorneys of casualty, insurance or other companies representing such defendants, and the investigation will extend to the practices of other persons acting as intermediaries between the attorneys for the plaintiff and for the defendant, or between the agents of either, and as to their methods of bringing about settlements. The investigation is extended to cover any illegal practices of attorneys that may be discovered during the hearing which are obstructive or harmful to the administration of justice, or unjust to litigants on either side, or corrupt, unlawful, fraudulent or unprofessional.

PETITION by the above associations for an inquiry into certain alleged abuses and illegal and improper practices.

*Charles E. Hughes,* for the Association of the Bar of the City of New York.

*Alfred R. Page,* for the New York County Lawyers' Association.

*Bernard S. Deutsch,* for the Bronx County Bar Association.

DOWLING, P. J. The Association of the Bar of the City of New York, New York County Lawyers' Association and Bronx County Bar Association, the three representative associations of lawyers in the First Department, have presented to this court a joint petition, wherein they set forth that there exists in this department a practice commonly known as " ambulance chasing," that is, the solicitation by lawyers of their employment to prosecute damage cases on the basis of the contingent fees, the amount of which is not fixed with reference to the nature or extent of the prospective services. Such agreements of retainer are frequently signed by injured persons, improvidently or ignorantly, when they are suffering from injuries recently received, which render them incapable of exercising a discriminating judgment.

" Ambulance chasing " is described more in detail as follows: Lawyers engaged in the practice referred to, by themselves or through their agents who are sometimes laymen, promise or give

to persons sustaining personal injuries some valuable consideration to induce them to employ such lawyers to prosecute claims for damages for their injuries. Such lawyers, through their agents, in some instances, maintain a well-organized and effective system of solicitation by which they obtain prompt information of accidents resulting in personal injuries, from hospital employees, ambulance drivers, taxicab drivers and others who are so situated as to have early knowledge, and they pay them compensation for such information. Solicitation for such business frequently takes place immediately after an injury has been received, often on the same day, in hospitals, in homes, and at the bedsides of injured persons, while they are in pain or otherwise distressed on account of their injuries.

In some instances the lawyer or his agent agrees to advance the costs of legal proceedings and to assume the payment of hospital expenses and medical bills as an inducement to the employment of the lawyer. The injured persons are solicited to sign printed contracts of retainer, and they frequently do so with only vague comprehension of what the papers contain or of their purpose and effect and without having at the time any knowledge of the character or standing or ability of the person retained except from a person or persons interested, frequently in a pecuniary way, in securing the retainer.

It is alleged that " ambulance chasing " pursued in the manner above described has been systematized to such an extent that the lawyers engaged in it control a large number of the so-called personal injury actions upon the calendars of the courts in this department, and these cases constitute a substantial proportion of the cases on the jury calendar of the Supreme Court. It is largely on account of the accumulation of such cases upon the calendars of the Trial Terms of the Supreme and other courts that the present congestion in the courts exists.

It is further set forth that lawyers in this department who engage in systematic " ambulance chasing " are relatively few in number; that the practice is condemned by the great majority of the bar as disreputable and calculated undeservedly to bring discredit upon the administration of justice and the profession at large, and that it is not consistent with honorable and ethical standards of professional conduct and in many cases is in violation of law.

The petition further recites that from the practices above described there flow other harmful results, among which are the following: Poor and ignorant claimants are overreached and oppressed by importunate lawyers, insensible to the obligations of their calling, or by solicitors acting in their behalf; claims to a great

number and involving a large aggregate amount come into the control of a single lawyer, who in many cases advances filing and jury fees, views the business as a commercial transaction, and settles or litigates the claims on the basis of the pecuniary advantage to himself rather than in the best interest of the client; clients are compelled to pay unconscionable fees, wholly incommensurate with the services performed or the results obtained; lawyers are tempted to, and sometimes do, resort to improper and illegal practices, frequently induced by reason of their financial interest in the result, and they otherwise violate their obligations to the courts and to the profession; and finally, thousands of suits are brought without merit, and without any intention by the attorneys for the claimant to bring them to trial.

It is further averred that the evils inherent in the practice of " ambulance chasing " are by no means confined to the activities of lawyers for the claimants, but they have brought in their wake activities on the part of representatives of defendants in those cases, which are equally improper and unlawful.    In many instances, it is a race between solicitors for lawyers, who seek to get retainers from the unfortunate injured persons, and representatives of the prospective defendants, who seek to get releases from the same injured persons for little or nothing, as to which of these would reach the bedside first.    In that way the poor unfortunates are overreached, their signatures are obtained to retainers or releases, at a time when, by reason of suffering, ignorance or lack of time to consider, the injured person can exercise no proper judgment in the protection of his or her rights.    To the extent that members of the bar are concerned in such practices, on behalf of defendants, either by themselves, or through directing or suggesting the activities of others, their conduct is as reprehensible as that of lawyers for claimants.

The petition recites that there has been widespread public criticism of the practices referred to and that such practices with their attendant evils, tend to undermine public confidence in the administration of justice.

The petitioners, therefore, pray (1) that an investigation be ordered by this court, to be conducted by itself or by such other appropriate procedure as it shall determine, in order that a judicial inquiry may be made into the practices hereinbefore alleged to exist and into any other legal and improper practices.

(2) That upon the conclusion of such investigation all parties found to have been participating in any such practices be brought into court in some appropriate action or proceeding and dealt with according to law; and that such other remedy or remedies may

be granted, and such judicial discipline exercised, as may be found to be effective and proper, to correct the abuses that may be found to exist.

This court is appreciative of the motives which have led the members of these associations to initiate this proceeding to clear the profession which is dear to them of the practices and the practitioners that have aroused the criticism which has been directed against the acts complained of, and which must inevitably weaken public confidence in it, unless steps are promptly taken to ascertain how far the criticism is justified; to end such abuses in so far as they are found to exist, and to take such remedial measures as may be found advisable to prevent the danger of their recurrence; with such disciplinary action as may be found to be required by the proof adduced.

This court is agreed upon the necessity of the investigation prayed for, and it is of the opinion that it has the power to direct it, as a necessary corollary of the powers expressly conferred by statute upon this court, as well as an indispensable part of the inherent power of the Supreme Court.

Subdivision 2 of section 88 of the Judiciary Law provides: " 2. The Supreme Court shall have power and control over attorneys and counsellors-at-law, and the Appellate Division of the Supreme Court in each department is authorized to censure, suspend from practice or remove from office any attorney and counsellor-at-law admitted to practice as such who is guilty of professional misconduct, malpractice, fraud, deceit, crime or misdemeanor, or any conduct prejudicial to the administration of justice; * * *." (Amd. by Laws of 1913, chap. 720, § 1.)

That the power thus granted to the Appellate Division is not limited merely to the trial of charges against lawyers, but extends to a preliminary investigation thereof, is made clear by the provision of subdivision 5 of the same section, as follows: " 5. The presiding justice of the Appellate Division to which charges of professional misconduct against an attorney and counsellor at law have been presented, may make an order directing the expenses of such proceedings, and the necessary costs and disbursements of the petitioner in prosecuting such charges, including also in a county wholly within a city or in a county having a population of over five hundred thousand inhabitants, the expense of a preliminary investigation in relation to such charges, to be paid by the county treasurer of a county within the judicial department, which expenses shall be a charge upon such county." (Amd. by Laws of 1921, chap. 295, § 1.)

This proceeding is one primarily based on the right of the Supreme

Court, under the statute, to exercise power and control over attorneys and counselors at law.

The Appellate Division of the Supreme Court has and may exercise all the jurisdiction and powers that are vested in the Supreme Court. The Constitution (Art. 6, § 2) provides: " The several Appellate Divisions, except as hereinafter provided, shall have and exercise such original or appellate jurisdiction as is now or may hereafter be prescribed by law. * * * From and after the last day of December, eighteen hundred and ninety-five, the Appellate Division shall have the jurisdiction now exercised by the Supreme Court at its General Terms and by the General Terms of the Court of Common Pleas for the City and County of New York, the Superior Court of the City of New York, the Superior Court of Buffalo and the City of Brooklyn, and such additional jurisdiction as may be conferred by the Legislature." (See, also, Judiciary Law, § 100.)

It is thoroughly well established that the Appellate Division, as the successor of the General Term, is not a separate court, but a branch of the Supreme Court; that in effect it is the Supreme Court sitting *in banc;* that it possesses all of the original jurisdiction of the Supreme Court; that, while as a matter of administrative convenience it will ordinarily decline to take original jurisdiction, it has full power to do so and may do so whenever it sees fit. (*Matter of Mitchel* v. *Cropsey,* 177 App. Div. 663; *People ex rel. Patrick* v. *Frost,* 133 id. 179; *Campbell* v. *Friedlander,* 51 id. 191; *Matter of Barkley* v. *N. Y. Central & H. R. R. R. Co.,* 42 id. 597; appeal dismissed, 161 N. Y. 647; *Matter of Pye,* 21 App. Div. 266; *DeHart* v. *Hatch,* 3 Hun, 375; *Anonymous* v. *Anonymous,* 10 How. Pr. 353; *Central Trust Co. of N. Y.* v. *Pittsburgh, S. & N. R. R. Co.,* 229 N. Y. 68; *Matter of Both,* 200 App. Div. 423.)

In *Matter of Barkley* v. *N. Y. Central & H. R. R. R. Co.* (*supra*) the court said: " This court has jurisdiction, if willing to exercise it, to hear and determine in the first instance any motion, contested or *ex parte,* that a Special Term may determine. The late General Term had appellate jurisdiction and also the same original jurisdiction to hear and determine motions, *ex parte* or contested, that the Special Term had, unless otherwise provided by statute. (*Drake* v. *Hudson River R. R. Co.,* 2 Code Rep. 67; *Mason* v. *Jones,* 1 Code Rep. [N. S.] 335; *Anonymous* v. *Anonymous,* 10 How. Pr. 353; *Tracy* v. *Talmadge,* 1 Abb. Pr. 460; *In the Matter of Opening Seventh Avenue,* 29 How. Pr. 180; *Gracie* v. *Freeland,* 1 N. Y. 228; *Syracuse Savings Bank* v. *Syracuse, Chenango & N. Y. R. R. Co.,* 88 id. 110; *Mandeville* v. *Marvin,* 30 Hun, 282, 287; 1 Whittaker Pr. [4th ed.] 38; 1 Tiff. & Smith Pr. 21; 1 Wait Pr. 317; 1 Rumsey Pr. 40.)

" ' From and after the last day of December, one thousand eight hundred and ninety-five, the Appellate Division shall have the jurisdiction now exercised by the Supreme Court at its General Terms.' (N. Y. Const. art. 6, § 2.) Legislative acts or rules of court, if any, which attempt to deprive the Appellate Division of the jurisdiction formerly possessed by the General Term and secured to the Appellate Division by the constitutional provision above quoted, are violative of said provision, and are void (*People ex rel. The Mayor* v. *Nichols*, 79 N. Y. 582). Although the Appellate Divisions have jurisdiction to hear motions in the first instance, they are not required to, and will not, except in cases where some exigency seems to require that they shall do so in the interest of justice."

It would, therefore, under the statutes be within the power of this court, if it so decided, to itself conduct the investigation desired, under the right of control of attorneys given to the Supreme Court. It is also our duty to act under the disciplinary power of this court.

As was said in *Matter of Wilson* (160 App. Div. 521): " It is our duty, upon presentation of any matter that may or might require discipline of an attorney and counselor, to examine it, and if we determine that it requires investigation to cause the institution of proceedings."

In the matter at bar the petition discloses a condition which may require the disciplining of a number of lawyers. Clearly it is the duty of the court to entertain the petition and, when it determines that the situation requires further investigation, to set afoot an inquiry by its own nominee, to the end that the facts may be ascertained and those deserving of discipline may have it meted out to them.

The disciplinary power of this court is not merely passive; it does not have to rest inert until some third party calls it into action. It is settled that the court may act *sua sponte*. (*Matter of Brewster*, 12 Hun, 109; *Matter of Percy*, 36 N. Y. 651; *Post* v. *Louis*, 184 App. Div. 533.) Similarly, it is submitted, that it is not limited to the exercise of jurisdiction only in cases where specific charges are made against a named attorney. It has power to act itself whenever it has probable cause to believe that professional misconduct has occurred, irrespective of whether that misconduct be that of a single respondent or of a particular class. Indeed, the least which can be required of this court, as the supervisory authority over the professional conduct of lawyers, is that, where its attention is seriously drawn to a general charge of professional misconduct against a class or unparticularized body of attorneys,

the court shall institute an investigation to ascertain the facts and exercise its remedial and disciplinary powers in so far as the facts warrant it. Only by such means will this court be able to devise appropriate rules to prevent the continuance of such evil practices and bring the unworthy to judgment and protect the worthy in the profession from the suspicions in the public mind.

We are of the opinion, as well, that the proposed investigation can be ordered as the exercise of a power inherent in, and an essential attribute of, courts of justice of general jurisdiction.

In *Matter of Steinway* (159 N. Y. 250) the court, after discussing various constitutional and statutory provisions held that notwithstanding the absence of statutory authority the Supreme Court had inherent power to grant a stockholder mandamus to inspect the corporate books, saying (at p. 258): " Thus we have the powers of the Court of King's Bench and the Court of Chancery as they existed when the first Constitution was adopted, blended and continued in the Supreme Court of the State, except as modified by Constitution or statute." To like effect is *McQuigan* v. *D., L. & W. R. R. Co.* (129 N. Y. 50). In that case the court said (at p. 52): " The powers of courts are either statutory or those which appertain to them by force of the common law, or they are partly statutory and partly derived from immemorial usage, which latter constitutes their inherent jurisdiction. They are organized for the protection of public and private rights and the enforcement of remedies. Presumptively, therefore, whatever judicial procedure is essential to enable courts to exercise their function is authorized." And in *Davis* v. *Zimmerman* (91 Hun, 489) the court said (pp. 493, 494): " The Supreme Court of this State has original and general jurisdiction of all cases in law and equity (Const. art. 6), with unlimited power to protect the rights of persons and property by adopting and enforcing all of the remedies afforded by an enlightened jurisprudence which are not inconsistent with the Constitution of the State, and it is its privilege and duty to mould and expand its processes so as to afford adequate protection to the rights of all citizens."

In 7 Ruling Case Law, 1033, it is said to be fundamental that " Every court has inherent power to do all things reasonably necessary for the administration of justice within the scope of its jurisdiction." (See, to like effect, 15 C. J. 732.)

This precise point has been passed upon by the courts of the State of Wisconsin, where an investigation into similar practices by attorneys was asked and granted, upon the ground that such practices seriously affected the administration of justice, tended to interfere with and obstruct the function of the courts and further

First Department, February, 1928.                [Vol. 222

tended to bring the courts and practice of the law into public contempt and ridicule.   The right to order such an investigation was upheld in a habeas corpus proceeding brought by an attorney involved in the investigation who had been adjudged guilty of contempt of court for refusal to comply with the direction of the court that he be sworn as a witness in the investigation, the validity of which he disputed.   The writ was quashed by the Supreme Court. (*State ex rel. Reynolds* v. *Circuit Court*, 193 Wis. 132; 214 N. W. 396.)   A writ of error was issued to review the original judgment, adjudging the attorney in contempt.   The judgment was modified by allowing the attorney to appear and, by testifying, purge himself of the contempt, but otherwise affirmed, and the validity of the investigation upheld, the Supreme Court saying (*Rubin* v. *State*, —— Wis. ——; 216 N. W. 513, 516, decided November 8, 1927): " In the exercise of their power to promote justice and to expedite the business of the courts, judicial tribunals are not compelled to ask the aid of the district attorney or to await the slow process of calling the grand jury.   Even though a grand jury might have dealt with the matter on the ground that champerty and maintenance are offenses against the law, still that remedy was not exclusive.   Courts possess the inherent power to do whatever may be necessary to purge their calendars of champertous cases and to discipline members of their bars.   In this case the court was not proceeding in an action against a single offender.   It was a proceeding against an offending practice which was more far-reaching in its results than the acts of any single individual could be.   The powers that have inhered in courts from the earliest days of their history give these tribunals ample authority to deal with situations like that presented by the Churchill petition.   It is absolutely essential to the exercise of such powers that courts should have the right to require testimony to be given under oath.

" ' The authorities, in so far as any can be found on the subject, are to the effect that a constitutional court of general jurisdiction has inherent power to protect itself against any action that would unreasonably curtail its powers or materially impair its efficiency. *   *   *   Circuit Courts have the incidental power necessary to preserve the full and free exercise of their judicial functions, and to that end may, in appropriate cases, make *ex parte* orders without formally instituting an action to secure the desired relief.' *In re Court Room*, 148 Wis. 109, 121; 134 N. W. 490, 495.

" What has just been quoted was said with reference to the power of a court to provide itself with a convenient court room in which to perform its judicial functions.   Members of the bar who are worthy of the confidence imposed in them and of the

important duties imposed upon them in the administration of justice are of far greater importance in the work of the courts than is the physical plant in which the court functions.  Lawyers who cherish the ideals of an honorable profession transcend in importance a hundred fold the room in which court is held.  If courts have the inherent power to take such judicial action as may be essential to secure the necessary physical surroundings in which to perform their functions, they must of necessity have the inherent power to clear their calendars of champertous actions and to surround themselves with members of the bar who are truly sworn ministers of justice.  Without lawyers whose professional conduct demonstrates that they are worthy of their high calling, court rooms and physical plants will never secure the proper administration of justice nor enable courts to perform their important functions in the affairs of men.  This power on the part of the courts is not based upon legislative action.  It inheres in the nature and constitution of judicial tribunals.  Without it courts could not continue to function as the needs of justice may require."

The fact that no precedent exists in this State for such an investigation is no answer to the prayer of the petitioners.  The jurisdiction of courts, in so far as not restrained by constitutional or statutory limitations, must of necessity adapt itself by new remedies to new conditions.  The Civil Practice Act recognizes this, when under the heading " General powers of courts of record," section 63, subdivision 3, provides that such courts have power: " To devise and make new process and forms of proceedings, necessary to carry into effect the powers and jurisdiction possessed by it."  The recent precedent in the State of Wisconsin before referred to, is based on cogent reasoning in the Supreme Court's opinion and meets the entire situation here presented.  The results of that investigation showed the way to complete and lasting reforms of the evils there proven akin to those complained of in the petition herein.

In the recent case of *United States* v. *Sinclair and Fall* (in the District of Columbia) Mr. Justice SIDDONS, presiding at the trial on November 15, 1927, made an order, reciting the filing of affidavits with him from which it appeared that there was reasonable cause for inquiring whether a criminal contempt of the court had been committed, and thereupon: " Ordered, that Messrs. Peyton Gordon, John E. Laskey and James S. Easby-Smith, members of the bar of this Court, be and they are hereby designated, appointed, authorized, empowered and directed to forthwith proceed to inquire whether there is reasonable cause to believe that a criminal contempt of this Court has been committed, and, if so, by what person or

persons, and if upon inquiry so made such cause is found to exist, to proceed as expeditiously as possible to prepare, file, present and prosecute in this Court against such person or persons charges of criminal contempt of court, to the end that the authority and power of the court be vindicated, sustained and enforced.

" And for this purpose, they shall invoke and use all appropriate means available to them."

The prayer of the petitioners herein will be granted, and an investigation will be ordered into the abuses complained of. This investigation will be conducted by a justice of the Supreme Court, sitting at Special Term with full power to summon witnesses and to compel the giving of testimony, as well as the production of books, papers and other documentary evidence. The petitioners herein are to agree upon and furnish one or more counsel to aid in the conduct of the investigation. Said investigation is to extend not only to the practice of " ambulance chasing " as set forth in the petition, and to the conduct of the attorneys claimed to be engaged in such practice, but to all those engaged with them in such practice as their agents, servants, employees, representatives runners, investigators, or by whatever name they may be called, as well as those who have procured or induced the placing of claims in their hands, or been parties thereto, no matter what other activities they may have been following at the time. It will likewise extend to any unlawful practices used by the attorneys or their agents in the collection or presentation of evidence and in the settlement of cases, as well as to the office methods used by them.

Said investigation shall also extend to the practices used by attorneys for defendants in such negligence cases, whether the personal attorneys of such defendants or the attorneys of casualty, indemnity, bonding or other companies representing such defendants insured in said companies; their agents, servants, employees, representatives, investigators, adjusters or by whatever name they may be called; as well as to the methods used by said attorneys and their agents in the collecting and presentation of evidence and in the settlement of cases and the office methods used by them.

Said investigation shall also extend to the practices of any other persons acting as intermediaries between the attorneys for plaintiff and for defendant, or between the agents of either, and to their methods in bringing about settlements, and to any division of fees, or agreements therefor, between attorneys and any other persons not attorneys, and to any agreements between said attorneys and other persons to pay money for any purpose in connection with claims or actions being prosecuted or defended by said attorneys.

Said investigation shall also be extended to cover any practices

of attorneys that may be discovered during the hearing, which are obstructive or harmful to the administration of justice, or unjust to litigants on either side, or corrupt, unlawful, fraudulent or unprofessional.

Said investigation will, of course, be open for the presentation of such evidence as may be brought before it by any person interested in the proper administration of justice, as well as by the petitioners herein.

An order in conformity with this opinion will be handed down, to effectuate the desired inquiry.

MERRELL, MARTIN, O'MALLEY and PROSKAUER, JJ., concur.

Motion granted.