In the Matter of DAWN OPERATORS, INC., Appellant, against WILLIAM A. LYON, as Superintendent of Banks of the State of New York, Respondent.

First Department, March 2, 1954.

*Samuel M. Rivelson* for appellant.

*Adelbert C. Matthews, Jr.,* of counsel (*Wendell P. Brown; Nathaniel L. Goldstein, Attorney-General,* attorney), for respondent.

BERGAN, J. The petitioner Dawn Operators, Inc., is described in the words of its president as a corporation " engaged entirely in the real estate business " and " conducting no banking operations of any kind and not affiliated with any banking corporation of any kind ". But on October 22, 1953, a State bank examiner sought to examine the books and records of the corporation, and meeting refusal of access, he served a subpoena duces tecum issued in the name of the Superintendent of Banks and requiring the corporation to produce before the superintendent its books and records and checkbooks for 1952 and 1953.

The subpoena recited that the records described were deemed by the superintendent " relevant and material " to an inquiry into " the conduct and affairs generally of John Doe and others ". The petitioner thereupon moved at Special Term for an order vacating the subpoena. The motion having been denied, petitioner appeals.

The Superintendent of Banks has, of course, no blanket power to issue at will subpoenas to require any citizen or corporation to bring in private books and records for his general inspection. The subpoena power does not operate in a vacuum but always in the context of a relevancy to the effective pertinent duty of the officer or body authorized to subpoena and examine witnesses.

What may be relevant to the superintendent's function is to be seen by examining the frame of the statutory delegation to him. He is authorized in very broad language to conduct such investigations as he may deem necessary to determine whether any person or corporation has violated any of the provisions of the Banking Law, and " to the extent necessary for this purpose " to examine relevant books, documents and records.

(Banking Law, § 36, subd. 5.) The mechanics by which the process of subpœna to effectuate this power is implemented are to be seen in section 38 of the same statute.

The essential argument of the petitioner is that the naked subpœna on its face fails to show that the inquiry comes within the range of the superintendent's authority; that the petitioner not being a banking corporation and not being subject to the general powers of inspection or visitation of the superintendent and mere nominal John Doe form of the subpœna not disclosing the actual nature of the inquiry, the jurisdiction of the superintendent to require compliance with the process is not established.

But the procedural facility employed by the petitioner to challenge respondent's jurisdiction by a motion at Special Term to vacate the subpœna on the ground it was, in respect of the petitioner, beyond the power of the superintendent, gave opportunity to the respondent to show the court, in justification of its issuance, that it was within his power and that it was for a proper purpose within the language of subdivision 5 of section 36 of the Banking Law.

Such a motion to vacate is the '' adequate '' and the '' proper remedy '' by which the scope, propriety and authority of a public officer to issue a subpœna is to be examined judicially. (*Carlisle* v. *Bennett,* 268 N. Y. 212, 218). There the plaintiff alleged that four broad subpœnas issued by the Attorney-General under the General Business Law (art. 23-A) were beyond the power of the defendant in the scope of inquiry. The action was for an injunction.

The court dismissed the complaint. It held that the limitations of power, i.e., what was within and what was without the range of the Attorney-General's right to subpœna, could adequately be determined by direct motion addressed to a subpœna. An adjudication whether the '' limit '' of the public officer's power to subpœna '' has been exceeded '' may be obtained upon such a motion. (P. 218.)

In response to the motion in the case before us to vacate the subpœna the respondent Superintendent of Banks showed by his own affidavit that the investigation in which the subpœna was issued to the petitioner was being followed into the activities of several corporations offering to consolidate and settle debts of debtors under arrangements by which the debtors make weekly payments which the corporations accumulate, and charging the debtor as high as 18% of the amount owed, transmit part payments to the debtors' various creditors.

Subdivision 1 of section 131 of the Banking Law prohibits any corporation, unless authorized by the State, from employing any part of its property or being interested in any fund for the purpose of receiving deposits or receiving for transmission or transmitting money. Section 340 prohibits engagement in the business of making loans of money or credit at a greater rate of interest or consideration than the lender would be permitted to charge under the requirements of the statute.

The superintendent's affidavit shows that the corporations under investigation by him follow a procedure of sending their own checks payable to various creditors for the account of debtors and that '' The information which this Department has regarding Dawn Operators, Inc., shows that Dawn Operators, Inc., is sending its checks payable to credit unions and banks for the accounts of various named individuals '' and that this '' follows the same pattern as that of the corporations presently under investigation.''

The affidavit further shows that the superintendent in examining a bank under his supervision has found checks of the petitioner '' payable to numerous banks and credit unions for the accounts of various named individuals '' all for sums under $500. This leads the superintendent to think that the petitioner may be engaged in the business of a licensed lender in violation of section 340 or in lending money at a usurious rate of interest.

To this justification by the respondent of his subpœna before the court at Special Term, the petitioner joins issue; but it is a justification which brings the inquiry within the scope of the respondent's statutory powers. He has the power of subpœna to '' the extent necessary '' to inquire whether provisions of the Banking Law have been violated. (Banking Law, § 36, subd. 5.) The proof before the Special Term thus shows the issuance of the subpœna duces tecum to be in '' a proper case '' within section 406 of the Civil Practice Act (*Matter of Sun-Ray Cloak Co.,* 256 App. Div. 620). The record satisfying us on this point we are led to affirm the order because if the power exists, the decision to exercise it in a proper case presents an administrative and not a judicial question. (*Matter of Hirshfield* v. *Craig,* 239 N. Y. 98, 110.)

It is not amiss to point out that the judicial proceeding in this matter might have been avoided had respondent followed the preferable practice of disclosing on the face of the subpœna the relevancy of the examination sought to some inquiry within his province.

The order should be affirmed, with $20 costs and disbursements.

PECK, P. J., CALLAHAN, BASTOW and BOTEIN, JJ., concur.

Order unanimously affirmed, with $20 costs and disbursements to the respondent.