In the Matter of CHARLES A. A'HEARN, Appellant, *v.* COMMITTEE ON UNLAWFUL PRACTICE OF THE LAW OF THE NEW YORK COUNTY LAWYERS' ASSOCIATION, Respondent.

Third Department, May 3, 1968.

48

*Vollmer, Wildermuth & McCarty (Charles M. McCarty* of counsel), for appellant.

*Daniel M. Shientag* for respondent.

GIBSON, P. J. The petitioner appeals from an order of the Supreme Court at Special Term in New York County, which denied his motion for an order quashing or, in the alternative, modifying a subpœna duces tecum issued to him by respondent Committee on Unlawful Practice. The appeal was transferred to this court from the Appellate Division of the Supreme Court in the First Judicial Department pursuant to CPLR 5711.

The petitioner, according to his affidavit submitted in support of the motion, is a licensed life insurance agent and broker, is not a lawyer and has long been "engaged in the business of pension and profit sharing planning", presently with offices in New York County. The respondent Committee on Unlawful Practice of the Law of the New York County Lawyers' Association caused the subpoena now in question to be issued over the signature of its attorney, that of the Clerk of the Appellate Division and the printed attestation of the Presiding Justice and caused it to be served upon petitioner, who was thereby directed to appear before a subcommittee of respondent "to testify and give evidence in a certain investigation now being conducted by said Committee with regard to the practice of CHARLES A. A'HEARN [petitioner] and others in Violation of Sections 90 and 750B of the Judiciary Law of the State of New York". The subpoena required, also, that petitioner produce copies of advertisements placed by him offering his "services in connection with pensions, pension plans, profit sharing plans, stock pension plans and deferred compensation plans of every nature and description between January 1, 1966 and May 31, 1967"; as well as copies of brochures and similar writings issued or distributed by him during the same period, and, finally, copies of pension and other plans prepared by him, copies of agreements made by him with his customers and various business records and files.

The subpoena was issued in purported compliance with rule XII-A of the Special Rules of the Appellate Division First Department in regard to conduct of attorneys, providing as follows:

"Rule XII-A. Preliminary Investigation of Persons, Firms or Corporations Unlawfully Practicing or Assuming to Practice Law. Upon application by the Chairman or Acting Chairman of the Committee on Unlawful Practice of the Law of the New York County Lawyers' Association, the Association of the Bar of the City of New York, or the Bronx County Bar Association, disclosing that such Committee has reason to believe that a person, firm or corporation is unlawfully practicing or assuming to practice law, and that such Committee desires that an investigation thereof be conducted, or upon application by any such person, firm or corporation under such investigation, the clerk of this court shall issue subpoenas in the name of the Presiding Justice for the attendance of witnesses and production of books and papers before such Committee, or any subcommittee of such Committee designated in such application

at the time and place within the First Judicial Department that said Committee or subcommittee regularly meets.

" Each Committee or subcommittee conducting such a preliminary investigation is empowered to take and transcribe the evidence of witnesses who may be sworn by any person authorized by law to administer oaths."

The subpœna now under attack was issued following an exchange of letters between the parties, commencing with the subcommittee's letter of November 21, 1966, stating that the services offered by petitioner to the public " in the designing and drafting of pension, profit-sharing, and employee benefit plans and programs " may constitute the unauthorized practice of law, within the prohibitions of sections 270 and 280 of the Penal Law and subdivision B of section 750 of the Judiciary Law, and requesting that petitioner arrange to meet with the subcommittee to " discuss and supply a representative sampling of " advertisements, records and other papers of the nature subsequently specified in the subpœna. The correspondence concluded with a letter from petitioner to the subcommittee, dated December 27, 1966, stating that petitioner had " no desire to cooperate with a Committee unwilling to state its aims, purposes and objectives ", although these would appear evident from the prior correspondence if they were not, indeed, reasonably inferable from the committee's title.

In its application to the Appellate Division for the issuance of the subpœna, the committee stated, substantially in the language of rule XII-A: " This application is made by reason of the fact that the Committee on Unlawful Practice of the Law of the New York County Lawyers' Association has cause to believe that the above named party [petitioner] is unlawfully practicing or assuming to practice law and said committee desires to conduct an investigation thereof."

The thrust of petitioner's primary attack is to the authority upon which the subpœna is purportedly based; but we can examine petitioner's contention that no authority exists only by first exploring the sources of the court's power generally, in respect of nonlawyers assuming to practice law. Such power clearly exists, being conferred by the provision that: " The supreme court shall have power and control over attorneys and counsellors-at-law *and* all persons practicing or assuming to practice law ". (Judiciary Law, § 90, subd. 2; emphasis supplied.) Implementation of the power is provided with equal clarity by subdivision B of section 750 of the Judiciary Law, which states: " B. In addition to the power to punish for a criminal contempt as set forth in subdivision A, the supreme

court has power under this section to punish for a criminal contempt any person who unlawfully practices or assumes to practice law; and a proceeding under this subdivision may be instituted on the court's own motion or on the motion of any officer charged with the duty of investigating or prosecuting unlawful practice of law, or by any bar association incorporated under the laws of this state.'' The court's specific powers, in these and other respects, are complemented and implemented by the provisions of section 216 of the Judiciary Law, headed, '' Additional powers and duties of the appellate divisions '', which, so far as here pertinent, provides that: '' In addition to the powers and duties elsewhere enumerated in this chapter, each appellate division, with respect to the courts in its department, shall have power to: 1. Adopt, promulgate, supplement, rescind and modify rules and orders necessary to implement its powers and duties hereunder including the supervision of the administration and operation of the courts in its department, not inconsistent with any statute hereafter adopted and the standards, policies, rules and orders of the administrative board.''

It was, of course, to effectuate these powers, as granted by sections 90, 750 and 216, that rule XII-A, concerning, among other things, the investigation of any '' person, firm or corporation * * * unlawfully practicing or assuming to practice law '', was promulgated. So clearly does the quoted reference include nonlawyers '' practicing or assuming to practice law '' that we mention only in passing petitioner's insubstantial contention to the contrary, predicated on the perhaps inappropriate placement of rule XII-A, a later promulgation, in Part 4 of the special rules, headed '' Attorneys '', in which it is (by rule I) provided that the '' rules shall apply to attorneys and counsellors-at-law who have their offices in the First Judicial Department.'' The Appellate Division's right to exert control in this field, whether by rule XII-A or otherwise, being thus established, we turn to the subsidiary issue of the subpoena power asserted in furtherance of such control.

Essentially, petitioner's argument is that the purported power of subpoena so plainly conferred by rule XII-A is ineffective because unauthorized by statute. The general statutory power is to be found in section 2-b of the Judiciary Law providing that, '' A court of record has power 1. to issue a subpoena requiring the attendance of a person found in the state to testify in a cause pending in that court ''. Petitioner contends, first, that here the subpoena was not issued in a pending action or proceeding, i.e., '' a cause pending '' in the Appellate Divi-

sion, and, second, that this provision of section 2-b must be read with that of CPLR 2302 (subd. [a]), authorizing the issuance of subpœnas "without a court order by the clerk of the court", with the effect, in petitioner's view, of limiting the clerk's power — which is, of course, the court's power — to issue subpœnas only in "a cause pending". Reason and precedent alike deny so narrow a view of the court's authority. It is true that the present inquiry is not a judicial proceeding in the ordinary sense. However, it differs in no material particular from the ambulance chasing investigations of the past and the present, in which the power of subpœna is implicit. Like them, it is "a preliminary inquisition, without adversary parties, neither ending in any decree nor establishing any right * * * it is a quasi-administrative remedy whereby the court is given information that may move it to other acts thereafter (Cf. *Matter of Richardson*, 247 N. Y. 401, at pp. 413, 418). The closest analogue is an inquisition by the grand jury for the discovery of crime." (*People ex rel. Karlin* v. *Culkin*, 248 N. Y. 465, 479.) From our conclusion that the Appellate Division had the right to order, conduct or sanction the investigation undertaken by respondent, the court's power of subpœna follows as a matter of course. (*People ex rel. Karlin* v. *Culkin*, *supra*; *Matter of Bar Assn. of City of N. Y.*, 222 App. Div. 580, 590; *Matter of Brooklyn Bar Assn.*, 19 Misc 2d 491.)

It is further argued, in answer to appellant's contentions, that section 2-b of the Judiciary Law does not restrict or limit the operation of CPLR 2302 (subd. [a]) and that the clerk was authorized to act under subdivision (a), whether or not there was "a cause pending" and, indeed, could have acted pursuant to inherent authority (8 Wigmore, Evidence [3d ed.], § 2195, p. 78) exercised in aid of the court's inherent power to investigate matters concerning the practice of law (*Matter of Bar Assn. of City of N. Y., supra*, pp. 586–590); and it is further asserted that, within the contemplation of the statutory subpœna power, the investigation is, in fact and in law, a proceeding and "a cause pending", commenced simply by respondent's application for the subpœna, as would have been the case in a Grand Jury investigation, which *Karlin* (*supra*, p. 479) found analogous (cf. *People ex rel. Van Der Beek* v. *McCloskey*, 18 A D 2d 205); but the determination which we have reached on broader grounds renders consideration of these additional contentions unnecessary.

Petitioner's final attack is directly upon the rule itself. He contends that rule XII-A, unless construed to apply only to pending actions or proceedings, contravenes his rights and

immunities under the Federal and State Constitutions. He stresses, in particular, the supposed violation of the prohibition against unreasonable searches and seizures imposed by the Fourth Amendment to the Constitution of the United States (and by section 12 of article I of the Constitution of the State of New York) arising out of the issuance of the subpœna without a prior showing of good cause. As to this, appellant contends that respondent committee's unverified and factually unsupported statements in its letter to the Appellate Division that the committee " has cause to believe that [petitioner] is unlawfully practicing or assuming to practice law and said committee desires to conduct an investigation thereof " fail to demonstrate good cause.

We find nothing in the constantly expanding body of the pertinent decisional law constraining us to impose upon a judicial inquiry under section 90 of the Judiciary Law the rigid test or good cause standard for which appellant contends; nor do we perceive any element of public policy pointing to the necessity of such a requirement in this or future cases. Section 90 vests the court with broad supervisory authority over persons who practice or assume to practice law. Recognizing this authority and the further responsibility imposed by subdivision B of section 750, it would be unreasonable indeed to deny to the court inquisitorial powers at least equal to those possessed by a Grand Jury and by the Attorney-General (Judiciary Law, § 476-c; and see, e.g., *Dunham* v. *Ottinger,* 243 N. Y. 423, app. dsmd. 276 U. S. 592). The objection urged by this appellant was advanced and overruled in the recent case of *United States* v. *Powell* (379 U. S. 48), in which Powell, in resisting a subpœna of certain tax records by the Commissioner of Internal Revenue, contended unsuccessfully that the Government was required to make a showing of probable cause for suspecting fraud, the court holding (p. 57) : " This view of the statute is reinforced by the general rejection of probable cause requirements in like circumstances involving other agencies. In *Oklahoma Press Pub. Co.* v. *Walling,* 327 U. S. 186, 216, in reference to the Administrator's subpœna power under the Fair Labor Standards Act, the Court said ' his investigative function, in searching out violations with a view to securing enforcement of the Act, is essentially the same as the grand jury's, or the court's in issuing other pretrial orders for the discovery of evidence, and is governed by the same limitations,' and accordingly applied the view that inquiry must not be ' " limited * * * by forecasts of the probable result of the investigation." ' In *United*

*States* v. *Morton Salt Co.*, 338 U. S. 632, 642–643, the Court said of the Federal Trade Commission, ' It has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function.  It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'  While the power of the Commissioner of Internal Revenue derives from a different body of statutes, we do not think the analogies to other agency situations are without force when the scope of the Commissioner's power is called in question.''  Apropos is the court's footnote citation of 1 Davis, Administrative Law, § 3.12 (1958).

The case law in New York seems to be in accord with this Federal approach.  (See, e.g., *Dunham* v. *Ottinger*, 243 N. Y. 423, app. dsmd. 276 U. S. 592, *supra*; *Matter of Dairymen's League Co-op. Assn.* v. *Murtagh*, 274 App. Div. 591, affd. 299 N. Y. 634.)  All the investigative body need establish on a motion to quash is that the materials sought are reasonably related to the matter being investigated and to the public purpose sought to be achieved.  (*Matter of La Belle Creole Int., S. A.* v. *Attorney-General of State of N. Y.*, 10 N Y 2d 192, 196, mot. for rearg. den. 10 N Y 2d 1011; and see *Matter of Ryan* v. *Lefkowitz*, 26 A D 2d 604, affd. 18 N Y 2d 977; *Matter of Dawn Operators* v. *Lyon*, 283 App. Div. 358, mot. for lv. to app. den. 306 N. Y. 977, app. dsmd. 307 N. Y. 673; *Matter of Prestige Sewing Stores of Queens* v. *Lefkowitz*, 54 Misc 2d 188; *Oklahoma Press Pub. Co.* v. *Walling*, 327 U. S. 186, 208–209.)  These prerequisites have been established; indeed, they are self-evident.  Appellant's argument predicated on unlawful search and seizure accordingly fails.  He seems not to press his additional contentions of deprivation of other constitutional rights; there is some doubt whether they are properly before us, but we have considered them, nevertheless, and find none of substantial merit.

The dissent relies in some part on *Matter of Dawn Operators* v. *Lyon* (*supra*) but, as hereinbefore indicated, *Dawn* seems to us to support, instead, the contrary conclusion at which we have arrived.  There, the essential basis of the attack was '' that the naked subpœna on its face fails to show that the inquiry comes within the range of the superintendent's authority '' (p. 360); and, after validating that contention, but upholding the subpœna on the basis of extrinsic proof, Justice BERGAN wrote: '' It is not amiss to point out that the judicial proceeding in this matter might have been avoided

had respondent followed the preferable practice of disclosing on the face of the subpœna the relevancy of the examination sought to some inquiry within his province '' (p. 361). In the case before us the subpœna is by no means '' naked ''; and on its face the relevancy of the contemplated examination to an authorized inquiry into unlawful practice of the law was clearly disclosed. In *Dawn*, the reference was to '' matters relating to the conduct and *affairs generally* of *John Doe* and others '' (emphasis supplied); here it was to '' a certain investigation now being conducted by said Committee with regard to the practice of CHARLES A. A'HEARN and others in Violation of Sections 90 and 750B of the Judiciary Law of the State of New York ''. Clearly, it seems to us, this language satisfies the rule of *Dawn*; and this independently of the parties' prior correspondence, which disclosed the purposes of, and authority for the inquiry and petitioner's recognition thereof, implicit, indeed, in his affirmative statement, '' I assure you I am not engaged in the practice of the law.'' Also inapropos, in our view, is the dissent's citation of *Matter of Sun-Ray Cloak Co.* (256 App. Div. 620) involving a subpœna duces tecum issued, with no showing of materiality or necessity, by an arbitrator, '' not a public or a judicial officer '', to a witness not a party to the arbitration agreement (p. 624). In further reference to the dissent, we cannot concede the validity of the distinction there made with respect to the *Oklahoma Press* and *Powell* line of cases (327 U. S. 186; 379 U. S. 48, *supra*), inasmuch as it appears that in *Ryan* v. *United States* (379 U. S. 61), the companion case to *Powell*, the same flexible standard of reasonableness discussed in the dissent was applied to the issuance of a subpœna for the records of an individual (see, also, *Matter of Ryan* v. *Lefkowitz*, 26 A D 2d 604, affd. 18 N Y 2d 977).

It by no means follows, however, that appellant is without adequate or meaningful protection. The court, inherently and by statute, possesses the right, which it will ever be quick to exercise, to protect against the abuse of its process and the oppressive or arbitrary utilization thereof by the investigator. Petitioner on his present application, of course, resists the production of any evidence at all and our affirmance of Special Term's proper denial of the total relief sought should not foreclose him, upon obedience to the terms of the subpœna generally, from moving with respect to any specific item or items of the evidence directed to be produced, upon a particularized and '' sufficient showing of oppression or undue hardship ''. (*Matter of Beatty* v. *Commission of Investigation of*

*State of N. Y.*, 16 A D 2d 1021, affd. 12 N Y 2d 685; and see CPLR 2304; *United States* v. *Powell*, 379 U. S. 48, 58, *supra*; 1 Pomeroy, Equity Jurisprudence [5th ed.], § 204, p. 334.)

The order should be affirmed, without costs.

HERLIHY, J. (dissenting). The petitioner is not a lawyer, but it would appear that he is suspect of a charge of unlawfully practicing law in violation of section 90 and subdivision B of section 750 of the Judiciary Law of the State of New York.

That the court has the power to issue the subpœna is academic and requires no comment.

However, in the present case the petitioner in his contentions as to the violation of his constitutional rights raises the more fundamental issue as to whether or not this was a proper case for the exercise of the subpœna power. Whatever presumption of regularity might be otherwise indulged in is inapplicable in the present proceeding.

It is to be firstly noted that the present subpœna would appear to have been improperly issued by the Clerk of the court since the application failed to disclose that the applicant had any reason to believe the petitioner was practicing or assuming to practice law. I am aware that the unverified application of the respondent states that it "has cause to believe", but the rule pursuant to which this subpœna was issued would appear to require an application "disclosing  *  *  * reason to believe" that specified unlawful conduct is being pursued. The application for the subpœna discloses nothing beyond a desire to investigate as did the respondent's affidavit on the motion.

In *Matter of Dawn Operators* v. *Lyon* (283 App. Div. 358, 359, mot. for lv. to app. den. 306 N. Y. 977, app. dsmd. 307 N. Y. 673) the First Department in a unanimous opinion by Mr. Justice BERGAN stated (p. 359): "The subpœna power does not operate in a vacuum but always in the context of a relevancy to the effective pertinent duty of the officer or body authorized to subpœna and examine witnesses." Presently the application for the subpœna was not verified, did not set forth facts, nor did it set out the source of respondent's belief that the appellant was unlawfully practicing law. In short, there was no proof that the appellant was doing anything wrong. The affidavit in opposition to the motion to quash, as distinguished from the one in *Dawn*, gave no facts, set forth no source of information or in any respect gave a basis for the relief requested by the respondent.

In *Matter of Anonymous* v. *Arkwright* (5 A D 2d 792) there was an investigation ordered by the court and the analogy of

that situation to the present situation by the majority is misleading. In *Matter of Association of Bar of City of N. Y.* (222 App. Div. 580) the First Department considered a petition for an inquiry into "ambulance chasing" and after deciding that it had such power, ordered an investigation as a result of the facts alleged in the petition. In the present case it is not clear that the subpœna was issued in connection with a general investigation of those persons involved in the creating of employment benefit programs and in any event, it was not issued pursuant to any directive of the First Department to investigate such plans or planners.

In my opinion, a motion to quash a subpœna in civil matters necessitates a disclosure by the issuing authority that there is some rational connection between the person or material sought and the duty being carried out by such procedure. (See *Matter of Dawn Operators* v. *Lyon, supra*; [cf. subpœna there questioned with the present subpœna] *Matter of Sun-Ray Cloak Co.,* 256 App. Div. 620, 625.) The motion to quash was denied in *Dawn* because the court found that the affidavit of the Superintendent of Banks contained specific allegations of alleged transactions involving *Dawn.* A sufficient showing might be very slight in terms of evidentiary matters, but the present record contains nothing to create even a suspicion that the petitioner has been engaged in dispensing legal advice. The affidavit submitted on behalf of the respondent in this proceeding is an indulgence in generalities rather than specifics and makes the presumptuous statement that by definition, services rendered in regard to—"pension plan, profit sharing plan, stock plan and other employee benefit programs"—involve the "rendition of legal advice and the performance of legal services." Upon appellant's request for advice as to whether the investigation was directed against him personally or was an "in-depth study" of such plan, the committee refused to state its objective. It would seem that appellant was entitled to know whether he was to become a target of an investigation, the result of which, if found guilty, would subject him to a misdemeanor charge (former Penal Law, §§ 270, 272; now Judiciary Law, §§ 478, 485). The recital of mere suspicion followed by a declaration of purpose to investigate the correctness of such suspicion indicates a voyage of discovery that the law does not tolerate. (See *People ex rel. Livingston* v. *Wyatt,* 186 N. Y. 383, 391, 393 [1906]; also *Boyd* v. *United States,* 116 U. S. 616.)

*Matter of Dawn Operators* v. *Lyon* (*supra*) suggests that something more than a showing of naked power and jurisdiction

is necessary for a " proper case ". The requirement by the First Department's own rule that the application for a subpœna *disclose* reasons to believe that the prohibited conduct is being pursued, indicates that a subpœna was not to be issued except upon a factual showing of unlawful practice against the person subpœnaed, but, under any circumstances, when a subpœna is challenged, the supporting affidavits must set forth relevant facts. Special Term seems to have assumed such facts.

The courts are the protectors of the rights and privileges of individuals such as A'Hearn and there is a valid distinction between his rights and those of a corporation. In *Oklahoma Press Pub. Co.* v. *Walling* (327 U. S. 186), the court established a flexible standard of probable cause to satisfy the requirements of the Fourth Amendment applicable when a subpœna duces tecum issued. The court said (p. 208): "Without attempt to summarize or accurately distinguish all of the cases, the fair distillation, in so far as they apply merely to the production of corporate records and papers in response to a subpœna or order authorized by law and safeguarded by judicial sanction, seems to be that the Fifth Amendment affords no protection, by virtue of the self-incrimination provision, whether for the corporation or for its officers; and the Fourth, if applicable, at the most guards against abuse only by way of too much indefiniteness or breadth in the things required to be ' particularly described,' if also the inquiry is one the demanding agency is authorized by law to make and the materials specified are relevant. The gist of the protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable." It is important to note that the court's decision was limited to obtaining corporate records (see *Oklahoma Press Pub. Co.* v. *Walling, supra,* pp. 204–208). Subsequent decisions of the court have indicated that the flexible standard of reasonableness announced in *Oklahoma Press Pub. Co.* was limited to the issuance of subpœnas for corporate records (cf. *United States* v. *Morton Salt Co.,* 338 U. S. 632, 651–652; *United States* v. *Bausch & Lomb Co.,* 321 U. S. 707, 727). Thus the majority's reliance on *United States* v. *Powell* (379 U. S. 48), a corporate records case, is misplaced. Moreover, in *Powell* the Government sought to obtain what would appear to be " required records ", that is, records that a taxpayer is obliged to keep and which therefore the Government has the right to inspect (cf. *Shapiro* v. *United States,* 335 U. S. 1, 17–19, 33–34), which is an additional reason for distinguishing *Powell* from the present case. The validity of the distinction between corporate and individual business records as a general proposition is not weakened by the case of

*Ryan* v. *United States* (379 U. S. 61). *Ryan* — a proceeding for judicial enforcement of an Internal Revenue Service administrative summons — like *Powell,* was a " required records " case and therefore its holding does not invalidate or dilute the distinction between corporate and individual records which are not " required records " and *Ryan,* then, like *Powell* has no application to the case at bar.

What has been stated herein should in no way be construed as necessarily applicable to attorneys and counselors at law duly admitted to practice before the courts of this State and thereby becoming officers of said courts.

Under the circumstances of this case, there being a failure to show any cause, " probable or otherwise ", for the attendance of the petitioner or for the production of his records, the motion to quash should have been granted, without prejudice to the issuance of another subpœna duces tecum upon another application showing additional facts which establish that the case is a proper one for the exercise of the Clerk's power as delegated by the First Department.

REYNOLDS, STALEY, JR., and GABRIELLI, JJ., concur with GIBSON, P. J.; HERLIHY, J., dissents and votes to reverse, in an opinion.

Order affirmed, without costs.