Fuld, J.
 

 La Belle Creole International, S. A., the petitioner herein, brought this proceeding to vacate a subpoena duces tecum served upon its president by the Attorney-General, commanding
 
 *195
 
 it to testify and produce its records and books. The court at Special Term denied the motion and the Appellate Division reversed and directed that the subpoena be vacated. In this court, the petitioner advances two contentions — and it is to them alone that we direct our attention—- first, that the subpoena is unconstitutionally vague and indefinite and, second, that, being a foreign corporation not doing business in this State, it is not subject to the service of process.
 

 The petitioner, a Panamanian corporation with its principal place of business in Haiti, is in the business of providing a service for the placing of orders for liquor by residents of this country traveling abroad and of arranging for the delivery of the liquor to their homes duty free. A New York corporation, Intramerica Export, Inc., with offices in New York City, pursuant to agreement with the petitioner, places advertisements in local newspapers, informing the public of the petitioner’s
 
 “
 
 duty-free liquor service ” and upon request it supplies order kits to prospective purchasers for use outside the United States.
 
 [1]
 
 One who desires to purchase liquor mails his order form to the petitioner at an address in Switzerland and the petitioner places the order in Europe for the account of such purchaser. After notice is sent to the United States Customs Service, the liquor is sent to the purchaser’s home, payment being made either in Switzerland or Puerto Bico.
 

 On November 1,1960, the Attorney-General served a subpoena upon the petitioner’s president at a New York City hotel, requiring the petitioner to give testimony
 
 “
 
 in an inquiry by the Attorney General to determine whether an application should be made or an action instituted *
 
 * *
 
 [pursuant to an Executive Law provision] to enjoin [the petitioner] from the commission of persistently fraudulent or illegal acts ” and directing the production of corporate books and records from January 1, 1960 “ to date ”. As indicated, the petitioner moved to vacate the subpoena and, in support of its position, urged that the subpoena is defective and void in that it fails to show what matters
 
 *196
 
 are in fact under investigation or in what manner the requested documents are relevant and material to such investigation and that, in any event, it is not amenable to process since it is a foreign corporation not doing business in this State.
 

 In our view, the subpoena is valid. It was issued pursuant to subdivision 12 of section 63 of the Executive Law which recites that, “ Whenever any person shall engage in repeated fraudulent or illegal acts * * * in the carrying on, conducting or transaction of business, the attorney-general may apply * * # for an order enjoining the continuance of such business activity ”. In connection with the application, the statute authorizes the Attorney-General to take proof and to issue subpoenas requiring the person involved to attend and produce books, as provided in section
 
 406 of
 
 the Civil Practice Act. (See
 
 Dunham
 
 v.
 
 Ottinger,
 
 243 N. Y. 423.)
 

 While the Attorney-General should perhaps have “ followed the preferable practice of disclosing on the face of the subpoena the relevancy of the examination sought to some inquiry within his province ”, his failure to do so does not thereby render the subpoena void.
 
 (Matter of Dawn Operators
 
 v.
 
 Lyon,
 
 283 App. Div. 358, 361, motion for leave to appeal den. 306 N. Y. 977; see, also,
 
 Matter of Manning
 
 v.
 
 Valente,
 
 297 N. Y. 681, affg. 272 App. Div. 358, 361.) And, upon a preliminary motion, such as the present, to contest “ the obligation of the writ ”, he need only show that the records and books which he seeks bear “ a reasonable relation to the subject-matter under investigation and to the public purpose to be achieved.”
 
 (Carlisle
 
 v.
 
 Bennett,
 
 268 N. Y. 212,217.) He does not, it is true, have
 
 “
 
 arbitrary and unbridled discretion as to the scope of his investigation”
 
 (Carlisle
 
 v.
 
 Bennett,
 
 268 N. Y. 212, 217,
 
 supra),
 
 but, unless the subpoena calls for
 
 “
 
 documents which are utterly irrelevant to any proper inquiry”
 
 (Matter of Dairymen’s League Co-op. Assn.
 
 v.
 
 Murtagh,
 
 274 App. Div. 591,595, affd. 299 N. Y. 634) or its “ futility * * * to uncover anything legitimate is inevitable or obvious ”, the courts will be slow to strike it down.
 
 (Matter of Edge Ho Holding Corp.,
 
 256 N. Y. 374, 382; see, also,
 
 Matter of Broadway Maintenance Corp.
 
 v.
 
 Grumet,
 
 9 N Y 2d 7.19;
 
 Matter of Joint Legis. Committee [Teachers Union],
 
 285 N. Y. 1, 9.) As this court stated in the
 
 Edge Ho Holding Corp.
 
 case (256 N. Y., at pp. 381-382), “ Investigation will be paralyzed if argu
 
 *197
 
 ments as to materiality or relevance, however appropriate at the hearing, are to be transferred upon a doubtful showing to the stage of a preliminary contest as to the obligation of the writ.”
 

 We have no doubt that the information sought by the Attorney-General was relevant to his inquiry. He was empowered to investigate allegedly illegal acts in the conduct of business in New York. The petitioner was engaged in a business which the Attorney-General contends was subject to regulation under the Alcoholic Beverage Control Law. Whatever the ultimate outcome, there can be no doubt that its books and records were material and pertinent in an investigation whose purpose was to ascertain whether or not it was carrying on its affairs in compliance with the relevant provision of that statute. The circumstance that the subpoena seeks books which cover a 10-month period does not render it so broad or onerous as to justify a charge that the Attorney-General was embarking
 
 “
 
 upon any roving course for the purpose of generally prying into the affairs of any person.”
 
 (Dunham
 
 v.
 
 Ottinger,
 
 243 N. Y. 423, 433,
 
 supra.)
 

 The more interesting and provocative question stems from the circumstance that the petitioner is a foreign corporation. It is argued that it is not doing business in this State and, hence, not subject to the service of the subpoena.
 

 What constitutes “ doing business” in order to render a foreign corporation amenable to process is not susceptible of exact delineation. Bach case must be decided on its own facts having in mind the nature of the action or proceeding involved. To justify a civil suit against it and to satisfy due process requirements, the foreign corporation must possess such “ minimum contacts ” with the State that maintenance of the suit will not offend 1 ‘ traditional notions of fair play and substantial justice ”.
 
 (McGee
 
 v.
 
 International Life Ins. Co.,
 
 355 U. S. 220, 222; see, also,
 
 International Shoe Co.
 
 v.
 
 Washington,
 
 326 U. S. 310, 314;
 
 Miller
 
 v.
 
 Surf Props.,
 
 4 N Y 2d 475, 480;
 
 Sterling Novelty Corp.
 
 v.
 
 Frank & Hirsch Distr. Co.,
 
 299 N. Y. 208, 210.) However, the right of a litigant to bring an action against a foreign corporation is not necessarily the measure of the State’s power to regulate it. “ What is necessary to * # * maintain a suit by a creditor ’ ’, it has been said, is not
 
 *198
 
 “ determinative when the state seeks to regulate solicitation within its borders
 
 (Travelers Health Assn.
 
 v.
 
 Virginia,
 
 339 U, S, 643, 653, per Douglas, J., concurring.) Where the purpose of the proceeding is to protect the citizens of the State from potentially dangerous consequences, less is required than might otherwise be the case, (See, e.g,,
 
 Travelers Health Assn.
 
 v.
 
 Virginia,
 
 339 U. S. 643,
 
 supra.)
 

 In the case before us, it is impossible to ascertain whether the New York corporation, Intramerica Export, is the petitioner’s exclusive agent. Something more than mere solicitation appears to be involved in its activities; it also supplies the order kits without which the petitioner would have no way of obtaining business here and, from the petitioner’s own papers, it appears that it obtains the orders in systematic and continuing fashion through an agent with an established and permanent place of business in this State. The issuance of a subpoena is not rendered improper because it may produce the evidence required to establish that the petitioner is doing business in New York.
 

 Be that as it may, though, even if the petitioner’s contacts with this State were deemed to be less than necessary to justify the maintenance of a civil suit, it is our view that it would still be amenable to the subpoena served upon its president by the Attorney-General in connection with the investigation the latter seeks to initiate.
 

 A foreign corporation’s immunity from civil suit in New York, on the ground that it is not doing business there, does not mean that it is immune from investigation by the Attorney-General in an inquiry to determine whether it is violating the laws of this State. As long as that official has reasonable basis for believing that the corporation violated a New York statute, he is not prevented by the due process clause of the Federal Constitution from exercising his power of subpoena and initiating an investigation designed to ascertain the facts. (Cf.
 
 Travelers Health Assn.
 
 v.
 
 Virginia,
 
 339 U. S. 643, 647,
 
 supra; United States
 
 v.
 
 Morton Salt Co.,
 
 338 U. S. 632, 641-643;
 
 Hess
 
 v.
 
 Pawloski,
 
 274 U. S. 352;
 
 Wilentz
 
 v.
 
 Edwards,
 
 134 N. J. Eq. 522, 530-531;
 
 Stevens
 
 v.
 
 Television, Inc.,
 
 111 N, J. Eq. 306, 307-308;
 
 State ex rel. Railroad & Warehouse Comm.
 
 v.
 
 Mees,
 
 235 Minn. 42; see, also, Restatement, Judgments, § 23.)
 

 
 *199
 
 The Alcoholic Beverage Control Law was enacted to regulate, among other things, the sale of alcoholic beverages for the purpose of fostering and promoting temperance in their consumption. To that end, those who traffic in liquor, whether directly or by mail, are required to be licensed, their failure to comply with such requirement constituting a misdemeanor (Alcoholic Beverage Control Law, § 102, subd. 1; § 130). The AttorneyCeneral is authorized to enjoin illegal acts in the carrying on of business, with appropriate subpoena powers to investigate possible violations of law. The requirements of due process do not preclude the extension of this regulatory scheme to the petitioner. Through its New York
 
 “
 
 representative ”, Intramerica, it advertised in New York newspapers, soliciting orders from New York residents for liquor to be purchased abroad and delivered by mail to their homes. These acts within New York State were sufficient to render the petitioner subject to the service of the subpoena here under consideration.
 

 The order of the Appellate Division should be reversed and that of Special Term denying the motion to vacate the subpoena reinstated, without costs.
 

 Chief Judge Desmond and Judges Dye, Froessel, Burke and Foster concur with Judge Fuld; Judge Van Voorhis dissents and votes to affirm.
 

 Order reversed, etc.
 

 [1]
 

 . One such advertisement appearing in the
 
 New York Herald Tribune
 
 described how any person planning a trip abroad could have duty-free liquor delivered to his home. “ Ask your travel agent for information ”, the advertisement concluded,
 
 “
 
 on La Belle Creole International’s duty-free liquor service or write to representatives of the firm at 366 Broadway