AQUASCUTUM OF LONDON, INC., and
Rodex of London, Ltd., Plaintiffs,

v.

S/S AMERICAN CHAMPION, her engines, etc., United States Lines, Inc., and W. Wingate & Johnston, Ltd., Defendants.

No. 68 Civ. 2802.

United States District Court
S. D. New York.

May 27, 1969.

Hill, Rivkins, Warburton, McGowan & Carey, New York City, for plaintiffs; by Andrew R. Colmant, New York City, of counsel.

White & Case, New York City, for defendant W. Wingate & Johnston, Ltd.; by Wells Burgess, New York City, of counsel.

## OPINION

POLLACK, District Judge.

Defendant W. Wingate & Johnston, Ltd. (hereinafter "Wingate") seeks dismissal of the complaint for lack of jurisdiction over the person, Rule 12(b) (2), and for insufficiency of service of process, Rule 12(b) (5), Fed.R.Civ.P.[1]

This action arises out of an alleged shortage in a shipment of 78 cartons containing wearing apparel that was carried on the S/S AMERICAN CHAMPION in a 20-foot shipping container from London to New York. The owners of the wearing apparel sue the ship, in rem, United States Lines, the shipowner, and Wingate, the London freight forwarder which arranged the shipment. Service of process, evidently pursuant to Rule 4(d) (3), Fed.R.Civ.P., was pur-

---

1. Two like actions are pending in this Court against the same defendant by other shippers based on substantially the same situation as that here involved. Like motions have been addressed to the summonses and complaints therein.

portedly effected on Wingate by delivering a copy of the summons and complaint to 11 Broadway, New York City, at the offices of Penson & Co., Inc., a New York customs broker.

1. *Service of process.*

■ A federal district court will exercise jurisdiction over a foreign corporation in an ordinary diversity case only when that would be done, under constitutionally valid legislation, by a state court in the state where the federal district court sits. Arrowsmith v. United Press International, 320 F.2d 219, 6 A. L.R.3d 1072 (2d Cir.1963). The applicable statute is therefore New York CPLR § 301.

■ Section 301 incorporates the prior New York decisional law as the test for the exercise of personal jurisdiction over a foreign corporation; and that test is whether in fact that corporation "is here, not occasionally or casually, but with a fair measure of permanence and continuity * * *." Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 115 N.E. 915 (1917). This is commonly known as the "doing business" or "presence" test; and as the New York Court of Appeals has observed:

> What constitutes "doing business" in order to render a foreign corporation amenable to process is not susceptible of exact delineation. Each case must be decided on its own facts * * *. La Belle Creole Int., S.A. v. Attorney-General, 10 N.Y.2d 192, 197, 219 N.Y.S.2d 1, 5, 176 N.E.2d 705, 708 (1961).

The facts presented on the pending motion are taken from the depositions of Penson & Co., World Warehouse, Inc., Belgian Lines, Inc., and United States Lines, Inc. and from the affidavit of Edward Cave Easter, a director of W. Wingate & Johnston, Ltd.

Wingate and Penson & Co. are wholly separate business entities, having no overlap of employees, officers, directors, or shareholders. Penson & Co. has no authority to enter into any kind of agreement binding Wingate; nor is it authorized to accept service of process for Wingate. Wingate and Penson & Co. have no contractual relations, either written or oral; and if Penson & Co. is employed as a customs broker on a shipment forwarded by Wingate, it is employed and paid by the owner of the shipment, not by Wingate.

In 1934, Penson & Co. incorporated a concern known as "Wingate & Johnston, Inc.", under the laws of the State of New York. With the exception of paying an annual franchise tax to preserve its existence and listing itself in the New York telephone directory at the number and address of Penson & Co., Wingate & Johnston, Inc. is and has always been a paper corporation, totally dormant.[2] It was formed without prior consultation with Wingate; it has no relation whatever to Wingate; and it has never been used for any purpose by Wingate.

■ Therefore, at the very least, service of the summons and complaint on Wingate by delivery to the offices of Penson & Co. must fail under Rule 4(d)(3), Fed.R.Civ.P., since by no stretch of the imagination can the latter be said to be a "managing or general agent" for Wingate. Kirkland v. Sapphire Int. Touring, Ltd., 262 F.Supp. 309, 314 (S. D.N.Y.1966); Klishewich v. Mediterranean Agencies, Inc., 42 F.R.D. 624 (E. D.N.Y.1966).

2. *Amenability to jurisdiction—Doing Business.*

■ Plaintiffs, in their memorandum of law in opposition to this motion, assert that Wingate is present and doing business within New York. The facts do not bear out this contention.

W. Wingate & Johnston, Ltd. is a corporation organized and existing under the laws of Great Britain, with its prin-

---

2. The Manhattan telephone directory contains a listing for "Wingate & Johnston Inc. 11 Broadway WH 3–6000," the phone number and street address of Penson & Co.

cipal place of business in London. Wingate has not qualified to do business in any state of the United States. No shareholders, directors, or officers of Wingate are citizens or residents of the United States. Wingate maintains no office or place of business in the United States.[3] Wingate neither leases nor owns any real or personal property in the United States; and it has no bank accounts in the United States. There is no one in the United States who is authorized to enter into agreements binding on Wingate; nor is there anyone in the United States authorized to accept service of process on its behalf.

The business of defendant Wingate is to arrange for shipments of goods from Great Britain to other countries. Wingate's responsibilities include bringing the goods from the factory in Great Britain to a warehouse where they are placed in large shipping containers, bringing the containers to a British port where they are put aboard a ship, handling British customs regulations, forwarding the carrier's ocean bill of lading to a warehouse facility at port of destination, arranging for insurance, prepayment of freight, and similar paper work. The goods are neither manufactured nor owned by Wingate; nor does Wingate itself actually carry the goods anywhere. Its sole function is to arrange for others to transport the goods; and for this service it is recompensed by the owner of the goods.

■ Wingate does send an officer or director to New York two or three times a year to visit customs brokers in this city to solicit their business; but it is well established that the occasional business visit of an officer of the corporation or the mere solicitation of business, without more, is not enough to constitute "doing business". Frummer v. Hilton Hotels Int., Inc., 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851 (1967); Fremay, Inc. v. Modern Plastic Mach. Corp., 15 A.D.2d 235, 222 N.Y.S.2d 694 (1st Dept.1961); Petroleum Financial Corp. v. Stone, 111 F.Supp. 351, 353 (S. D.N.Y.1953).

3. *Amenability to jurisdiction—Resident Agent.*

■ Plaintiffs contend that World Warehouse, Inc is Wingate's agent in New York. The containers which Wingate forwards are received at dockside in New York by World Warehouse, Inc. and brought to the latter's special warehouse in Brooklyn (called a bonded container station) where, under Customs supervision, each container is opened and the contents separated and prepared for delivery to the individual consignees. World Warehouse, Inc. also does certain paperwork in compliance with Customs regulations.

World Warehouse, Inc. performs these same services for many other foreign freight forwarders. There is no overlap between the employees, officers, directors, or shareholders of Wingate and World Warehouse, Inc. There does not appear to be any obligation binding World Warehouse, Inc to accept shipments forwarded by Wingate. Wingate has no control over the manner in which World Warehouse, Inc. performs these services; nor is it the direct beneficiary of these services since Wingate does not own the goods which it arranges to have forwarded to World Warehouse, Inc. The latter is not the exclusive receiver of goods which Wingate forwards, since its president was able to name at his deposition at least two other concerns in the New York area which provide similar services at Wingate's behest.

Plaintiffs contend that title to the goods in the container actually passed by means of a "house bill of lading" that Wingate issued in Great Britain and

---

3. See ftn. 2. The same page of the Manhattan telephone directory, some lines further down, also includes the listing "Wingate W & Johnston forwdg 11 Broadway WH 3–6000". Plainly this is the English company. This second listing is not mentioned by the parties and apparently was not inquired into on the depositions. However, this one fact does not change the result hereon.

mailed to the American consignee (or its customs broker). This argument suggests that Wingate is doing business in New York by controlling the movement of the goods in New York. When Wingate delivered the container involved herein to the carrier (United States Lines) in Great Britain, the latter issued an ocean bill of lading naming World Warehouse, Inc. as the consignee of the container in New York. The ocean bill of lading included a specification sheet listing the individual consignees of the goods in the container. Wingate forwarded this ocean bill of lading to World Warehouse, Inc. The latter, in turn, mailed to each specified consignee (or its customs broker) an extract of the ocean bill and the relevant portion of the specification sheet attached thereto. It is this extract which allowed the consignee to complete the Customs formalities and to pick up its portion of the shipment from World Warehouse, Inc. at its bonded container station in Brooklyn. Wingate is not in control of the goods in New York. It does mail its own house bill of lading to the consignee and to World Warehouse, Inc. along with the ocean bill; but it does not appear from the depositions submitted hereon that that permits any control over the goods to remain with Wingate.

"In such circumstances the acts of the broker representative [or warehouseman] * * * are not the acts of the so-called principal, and do not create a basis for jurisdiction against this defendant." A. Millner Co. v. Noudar, Lda., 24 A.D.2d 326, 329, 266 N.Y.S.2d 289, 293 (1st Dept.1966); and compare Sterling Novelty Corp. v. Frank & Hirsch Distr. Co., 299 N.Y. 208, 86 N. E.2d 564, 12 A.L.R.2d 1435 (1949), for a factual pattern leading to the opposite conclusion.

Plaintiffs also allege that Penson & Co. is Wingate's agent in New York. Penson & Co. deals with a great many foreign freight forwarders. If Wingate's consignee has not specified the use of a particular customs broker in New York, Wingate will notify Penson & Co. of this fact so that Penson & Co. may solicit that consignee's business when the shipment arrives. If the solicitation is successful, Penson & Co. is employed and compensated by the consignee, not by Wingate. The consignee is completely free to employ any customs broker of its own choosing or to perform the brokerage services itself. There is no contractual relationship between Wingate and Penson & Co.; nor does Penson & Co. pay Wingate for these business leads, although it evidently reciprocates by notifying Wingate in similar circumstances when it forwards shipments to Great Britain. The president of Penson & Co. also stated at his deposition that if a cargo damage claim arose on a shipment which Wingate had forwarded and for which Penson & Co. had the documents, the latter would notify the American representative of Wingate's insurance underwriters, if the documents indicated that Wingate had insured the shipment. The beneficiaries of such insurance policies are the individual consignees of the goods.

█ It is patent that the relationship between Wingate and Penson & Co. does not bring Wingate within the ambit of "doing business" within the state in the jurisdictional sense. A. Millner Co. v. Noudar, Lda., 24 A.D.2d 326, 329, 266 N.Y.S.2d 289 (1st Dept.1966); Parke-Bernet Galleries, Inc. v. Franklyn, 31 A. D.2d 276, 278, 297 N.Y.S.2d 151 (1st Dept.1969). Plaintiffs have not shown that Wingate "is 'engaged in such a continuous and systematic course of "doing business" here as to warrant a finding of its "presence" in this jurisdiction,' " nor have plaintiffs demonstrated that either Penson & Co. or World Warehouse, Inc. do "all the business which * * * [Wingate] could do were it here by its own officials." Frummer v. Hilton Hotels Int., Inc., 19 N.Y.2d 533, 536–537, 281 N.Y.S.2d 41, 43, 227 N.E.2d 851, 853 (1967). Compare the factual pattern in Miller v. Surf Properties, Inc., 4 N.Y.2d 475, 176 N.Y.S.2d 318, 151 N.E.2d 874 (1958), in which defendant was held not

to be doing business in New York with that in Bryant v. Finnish Nat. Airline, 15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439 (1965), in which the contrary result was reached.[4]

4. *Amenability to jurisdiction—Transaction of Business.*

Plaintiffs also contend that this Court should accept jurisdiction because the complaint states a claim that arises out of business transacted by Wingate in New York and that the New York courts would exercise jurisdiction in a like case pursuant to New York CPLR §§ 302 and 313.

The New York CPLR § 302(a) (1) provides that a court may exercise personal jurisdiction over any non-domiciliary who in person or through an agent "transacts any business within the state" where the cause of action arises out of that transaction. The only issue raised by the plaintiffs is whether Wingate's activities fall within the sweep of that statute.

In Kramer v. Vogl, 17 N.Y.2d 27, 31–32, 267 N.Y.S.2d 900, 903–904, 215 N.E. 2d 159, 161–162 (1966), the New York Court of Appeals, in discussing a case involving a manufacturer who shipped goods into the state, said:

> The issue boils down to whether the phrase "transacts any business within the state" covers the situation of a nonresident who never comes into New York State but who sells and sends goods into the State pursuant to an order sent from within the State. We do not have here * * * a nonresident defendant who has one or more local salesmen in this State or who solicits business in this State by means of catalogue, advertisements, or other promotional material circulated

> here. All we know is that these defendants in Austria made arrangements to sell merchandise f.o.b. to the local distributor. Defendants themselves carried on no sales, promotion, or advertising activities in this State. * * *

> Despite the comparative liberality with which we have construed the first paragraph of subdivision (a) of 302 we do not think that the facts displayed here show the case within that paragraph. The cause of action here sued upon cannot be said to have arisen out of any transaction of business in the State.

To the same effect, see Standard Wine & Liquor Co. v. Bombay Spirits Co., 20 N.Y.2d 13, 281 N.Y.S.2d 299, 228 N.E.2d 367 (1967); McKee Elec. Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 283 N. Y.S.2d 34, 229 N.E.2d 604 (1967).

*A fortiori*, where as here a freight forwarder merely makes arrangements in Great Britain for the shipment to New York of the products of an unrelated manufacturer, where the activities which its own personnel perform take place outside of New York, where it has no personnel within the state, and where its sole active commercial contact with anyone in New York is its mailing of the independent carrier's bill of lading to a New York City warehouseman and its own bill of lading to the New York importer, it cannot be said that the freight forwarder has transacted business in New York within the meaning of CPLR § 302(a) (1). Such circumstances do not constitute "the irreducible minimum forum activities constitutionally requisite to subject foreign corporations * * * to personal jurisdiction," Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15

---

4. Gelfand v. Tanner Motor Tours, Ltd., 385 F.2d 116 (2d Cir. 1967), is not applicable· here for plaintiffs have made no factual showing of solicitation of business on behalf of Wingate or that the purported New York representative provides services beyond "mere solicitation" and [that] these services are sufficiently important to the foreign corporation [so] that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.

N.Y.2d 443, 451, 261 N.Y.S.2d 8, 13, 209 N.E.2d 68, 71 (1965). See International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

 Plaintiffs contend that Wingate's issuance of its house bill of lading in London and the mailing of that document to New York is the transaction of business in the state on two grounds: because only with that document can the American importer claim his portion of the containerized shipment from World Warehouse, Inc.; and because the bill of lading is a negotiable instrument by means of which title to the goods can be transferred by the original consignee to a third party.[5] As to the first contention, the deposition testimony submitted hereon does not establish that Wingate's bill of lading is so essential; see page 30, *supra*. As to the second contention, the United States Supreme Court, after noting that it would be a mistake to assume that the present liberalizing trend in this area of the law heralds the eventual demise of all restrictions on the personal jurisdiction of state courts, declared that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed. 2d 1283 (1958). This Court has been unable to discover from the facts surrounding the shipment which gave rise to this law suit any "act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, *supra*, at p. 253, 78 S.Ct. at p. 1240.

Accordingly, the motion of defendant W. Wingate & Johnston, Ltd. to dismiss the complaint herein as to it for insuffi-

ciency of service of process and for lack of jurisdiction over the person must be and is granted.

So ordered.

---

5. It is appropriate simply to note that Wingate's bill of lading expressly provided that all agreements between the company and its customers shall be governed by English law and within the exclusive jurisdiction of the English courts.