Cleo MARANTIS, as Administratrix of the Estate of Dean Z. Marantis, Deceased, Plaintiff,

v.

DOLPHIN AVIATION, INC., Avco Corporation and Beech Aircraft Corporation, Defendants.

No. 76 Civ. 5472 (CHT).

United States District Court, S. D. New York.

June 28, 1978.

Kreindler & Kreindler, New York City, for plaintiff; James D. Veach, Michael W. Foster, New York City, of counsel.

Rogers & Wells, New York City, for defendant Beech Aircraft Corp.; William R. Glendon, Rex W. Mixon, Jr., Robert J. Jinnett, New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

■ This negligence and strict tort liability action was brought by the administratrix of the estate of Dean Z. Marantis, a New York resident who died in a Florida plane crash while piloting a Beechcraft "Musketeer" owned by the Sarasota Anti-Gravity Club. One of the named defendants, Beech Aircraft Corporation ("Beech"), has now moved pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure ("Rules") for dismissal of the complaint as to it, claiming lack of personal jurisdiction in this Court. Beech is a Delaware corporation with its principal place of business in Wichita, Kansas. It is not licensed to do business in New York, maintains no office, designated agent or representative here, and vigorously asserts that it is not "present" in the jurisdictional sense in the State of New York, to whose law this diversity court must look to determine amenability to suit. *Arrowsmith v. United Press Int'l*, 320 F.2d 219 (2d Cir. 1963). For the following reasons, the motion to dismiss is granted.

■ Where the "presence" of a foreign corporation is at issue, New York courts apply a "doing business" test to satisfy the rule that a "court may exercise such jurisdiction over persons, property, or status as it might have exercised heretofore." N.Y. C.P.L.R. § 301; *see, e. g., Beja v. Jahangiri*, 453 F.2d 959, 961 (2d Cir. 1972); *Delagi v.*

*Volkswagenwerk AG*, 29 N.Y.2d 426, 431, 328 N.Y.S.2d 653, 656, 278 N.E.2d 895 (1972); *Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533, 536, 281 N.Y.S.2d 41, 43, 227 N.E.2d 851 (1967). In support of the proposition that Beech is indeed "doing business" in New York, plaintiff's most persuasive argument centers on the presence here of Beechcraft East, Inc. ("East"), a franchised retail sales outlet for Beech aircraft and related products.[1] East is a wholly-owned subsidiary of Beech Holdings, Inc., itself a wholly-owned subsidiary of Beech. Thus, the New York-based unit is in effect the "grandchild" of Beech. East is one of seven Beech retail distributors in the state; the other six are independently owned. Beech has structured East to operate in what is facially a completely independent manner, with its own officers, board of directors, books, financial statements, annual reports, tax returns, property, debts, etc. Defendant's Reply Mem. 8. Distance between parent and subsidiary is increased by Beech's dealing with East in the same manner as it does with other franchisees: for example, all retail distributors purchase new aircraft from Beech in Kansas for their own accounts pursuant to a franchise agreement which, inter alia, neither controls retail price, nor requires exclusive dealing in Beech products, nor requires Beech-trained employees at the retail level. Prices and terms of payment for aircraft and for Beech demonstration services for new equipment are the same for East as for any other retail distributor. *Id.* at 9–11. However, Beech retains a good deal of control over all its franchisees, independent as well as subsidiary. For example, the franchise agreement contains a great many proscriptions and directives covering number and quality of sales and service personnel, suitability of facilities, soundness of credit

1. Plaintiff also claims that Beech is directly exposed to in personam jurisdiction in New York by virtue of the control it maintains over its independent franchised sales outlets, a proposition clearly rejected in *Delagi v. Volkswagenwerk AG, supra,* and through New York business visits by Beech employees, New York bank accounts and transfer agent, and mailings to New York owners of Beech products. The last three activities are not nearly sufficient for a finding of New York presence, and *Scanapico v. Richmond, Fredericksburg & Potomac R.R. Co.,* 439 F.2d 17, *aff'd en banc,* 439 F.2d 25 (2d Cir. 1970), cited by plaintiff, simply does not support the opposite conclusion.

and accounting systems, provision for identification with Beech through insignia on clothing, etc. Beech dealers, including East, use a Beech Sales Policy Manual which fixes the mechanics of consummating a sale to a retail customer and reporting it to Beech. Affidavit of James D. Veach, sworn to September 30, 1977, ¶¶ 23–29.

What distinguishes East from the other New York franchisees is the fact that it alone is a subsidiary of Beech. It was incorporated in Kansas, where Beech has its corporate headquarters. East board meetings are held in that state. Three of the four principal officers of East hold the same offices for Beech, and all but one of the directors of East is an officer or director of Beech. *Id.* ¶¶ 5, 8–12. Beech files a consolidated financial statement with the Securities and Exchange Commission in which East is identified as a wholly-owned subsidiary. Plaintiff's Exh. 31. East buys for resale from Beech the second largest volume of products for New York; some $13,780,000 in purchases were made by subsidiary from parent in the period from October 1976 to August 1977. Defendant's Reply Mem. 7. Indeed, East is Beech's largest New York purchaser of those who maintain a single retail location; the only better customer within the state is an independent distributor with two retail outlets, and its dollar amount of purchases from Beech does not equal twice the amount of Beech's sales to East. *Id.* Obviously, this large volume of sales by Beech to East also generates more ultimate revenue per dollar for the parent than do sales to other New York franchisees, since there is no independent entity to siphon off the retail segment of profit.

Despite the relationship between Beech and East and the clear benefits accruing to the parent from having a retail subsidiary here, this Court is obliged to hold that Beech has successfully avoided the use of those aspects of corporate organization and operation which have been held by New York courts to render a foreign corporation amenable to jurisdiction within the state. The New York Court of Appeals has thus far hewed to the "doing business" test in order to so hold a corporation and has certainly rejected the notion that "control" of retail sales policies by independent dealers renders the supplier jurisdictionally present within the state. *Delagi v. Volkswagenwerk AG, supra,* 29 N.Y.2d at 432, 328 N.Y. S.2d at 657, 278 N.E.2d at 897. Where, as here, there is a relationship of parent and subsidiary, the New York rule is that "[t]he control over the subsidiary's activities . . . must be so complete that the subsidiary is, in fact, merely a department of the parent." *Id.*

Beech's relationship with East appears to fall just short of that corporate intimacy which has led to "mere department" holdings in *Public Administrator v. Royal Bank of Canada,* 19 N.Y.2d 127, 278 N.Y.S.2d 378, 224 N.E.2d 877 (1967), and *Taca Int'l Airlines, S. A. v. Rolls-Royce of England, Ltd.,* 15 N.Y.2d 97, 256 N.Y.S.2d 129, 204 N.E.2d 329 (1965). In *Taca,* the case upon which plaintiff most heavily relies, the New York Court of Appeals examined the relationship between parent and subsidiary and concluded on the basis of the facts that the New York corporation was a "mere department" of the parent. The *Taca* facts were similar but somewhat stronger than the facts at bar: the English corporation owned, through an intermediate Canadian entity, all the stock of the American subsidiary. The subsidiary sold and serviced Rolls-Royce products; the various Rolls-Royce corporations had "some directors in common and key executive personnel in [the American branch] were former executives of either the English or Canadian company and were assigned to their positions by the parent English company." *Id.* at 101, 256 N.Y. S.2d at 131, 204 N.E.2d at 330. All of the American subsidiary's net income eventually appeared on the consolidated balance sheet of the English corporation. The officers of the entities conferred to set American policy. Customer warranties emanated from the parent. Technical training was given in England. All sales literature used in New York was written and published in England. However, the subsidiary owned no inventory of cars and when an order was

placed with the subsidiary it purchased the conforming car from the parent. Moreover, the subsidiary derived additional income directly from the parent and the intermediate corporation; the former paid the subsidiary a fixed fee for warranty servicing and the latter paid for local sales and service in connection with airplane engines.

Plaintiff maintains that the facts at bar evince even greater control of subsidiary by parent than in *Taca*, pointing to the identity of three of the four principal officers for each corporation and the virtually identical boards of directors.[2] Beech, on the other hand, urges that East's financial independence and its ownership of Beech products for its own account are the strongest indicia that it is not a "mere department" of the parent. On balance, the Court finds Beech's argument the more persuasive one, based on both New York and federal authorities.

When the United States Court of Appeals for the Second Circuit had occasion to apply the newly enunciated *Taca* standard in *Boryk v. deHavilland Aircraft Co.*, 341 F.2d 666 (2d Cir. 1965), the facts entering into the jurisdictional calculus included no-interest loans from parent to subsidiary, income paid out by subsidiary to parent as "dividends," and a purchase plan identical to that in *Taca* where the subsidiary ordered and paid for a parent product only after receiving a consumer order. The *Boryk* court also noted that *Taca* relied on a prior New York decision to establish the test for a finding of "mere department": in the older case, *Rabinowitz v. Kaiser-Frazer Corp.*, 198 Misc. 707, 96 N.Y.S.2d 642 (Sup.Ct. Kings Co. 1950), *aff'd*, 278 App. Div. 584, 102 N.Y.S.2d 815 (2d Dep't), *aff'd*, 302 N.Y. 892, 100 N.E.2d 177 (1951), the parent corporation had made enormous non-

interest-bearing loans and advances to the subsidiary, the executives and boards of the corporations were exactly the same, the parent—or occasionally the subsidiary—paid the salaries of executives of both corporations, the parent had executive offices located in New York, etc. Although in *Rabinowitz*, as in the case at bar, the subsidiary purchased for its own account from the parent, that single element of corporate independence was clearly outweighed by overwhelming evidence of the corporate financial overlap not present in the case sub judice. If *Taca* and *Boryk* represent a slight retreat from the patent disregard of corporate individuality in *Rabinowitz*, this Court is satisfied that East has maintained enough distinct corporate identity to withstand any further erosion of the "mere department" doctrine, even if such were warranted. Analysis reveals that it is not.

Plaintiff has seized upon some very broad language of the Second Circuit court of appeals to buttress its argument that New York would take jurisdiction of this matter. In *Beja v. Jahangiri, supra*, 453 F.2d at 961, the court stated:

> The New York Court of Appeals has, in general, taken a liberal view toward finding that foreign corporations are doing business within the state, and a number of its opinions have indicated that the "doing business" standard is practically equivalent to the most permissible one that the Constitution will allow.[3]

Following this statement, the *Beja* court listed four New York cases which appear to have applied this broad test. Upon examination, however, it must be concluded that these cases—taken singly or together—do not support an extension of the New York standard that would encompass the facts

---

**2.** New York courts have held that stock control, interlocking directors and officers and the like are merely indicia and not conclusive proof of corporate synonymity. *Musman v. Modern Deb, Inc.*, 50 App. Div. 2d 761, 377 N.Y.S.2d 17 (1st Dep't 1975).

**3.** *But see Intermeat, Inc. v. American Poultry Inc.*, 575 F.2d 1017 (2d Cir. 1978) (constitutional due process may require fewer contacts than "more restrictive" New York "doing business"

test, but court not required on the facts to "decide the continued strength of the 'doing business' concept in New York law, and hence decide whether the acts done in New York by [the defendant] were enough to support such jurisdiction under N.Y.C.P.L.R. § 301, as well as enough to satisfy the test of *International Shoe* [*Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)]." *Id.* at 1022).

now before this Court. *La Belle Creole v. Attorney-General*, 10 N.Y.2d 192, 219 N.Y. S.2d 1, 176 N.E.2d 705 (1961), and *Elish v. St. Louis Southwestern Ry. Co.*, 305 N.Y. 267, 112 N.E.2d 842 (1953), concern the quality and significance of direct corporate contacts with the state, rather than contacts inferred through the activities of a subsidiary. In *Elish* the facts showed that the defendant solicited business and conducted board meetings in offices maintained within the state; in *La Belle Creole* the question was not even one of amenability to suit: the court merely measured sufficiency of contacts so as to justify requiring the foreign corporation to comply with a New York State investigative subpoena.

The other two cases in the *Beja* reference are more significant to the matter at bar. The first, *Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851 (1967), is a case upon which plaintiff in this case also relies. In *Frummer* the non-profit New York subsidiary generated business for the parent's hotels through public relations and publicity work and acceptance and confirmation of room reservations. It was therefore held the parent's agent in New York, since it did "all the business which Hilton (U.K.) could do were it here by its own officials." *Id.* at 537, 281 N.Y.S.2d at 44, 227 N.E.2d at 854. The same cannot be said of the role East plays in Beech's organizational life: other than selling Beech products, an enterprise engaged in by independent retailers as well, East does not perform any service for Beech which the latter would be required to perform for itself within the state. It is not Beech's "agent" within the meaning of *Frummer*.

The last *Beja* citation is to *Public Administrator v. Royal Bank of Canada, supra,* a

case of such clearly demonstrable corporate indistinguishability that the *Royal Bank* court declared: "The facts detailed tend to establish that the [foreign corporation] is not merely a subsidiary of the [jurisdictionally present parent] but is, in fact, if not in name, [the parent] itself." *Id.* 19 N.Y.2d at 132, 278 N.Y.S.2d at 382, 224 N.E.2d at 879. Plaintiff has not sought to analogize the relationship of Beech and East with the relationship described in *Royal Bank*, nor could it.[4]

■ Finally, plaintiff relies on cases in other forums where jurisdiction has been upheld over foreign aircraft manufacturers. *Delray Beach Aviation Corp. v. Mooney Aircraft, Inc.*, 332 F.2d 135 (5th Cir. 1964), and *Griffin v. Air South, Inc.*, 324 F. Supp. 1284 (N.D. Ga. 1971), involve a "long-arm" statute, not a "doing business" predicate, and are therefore inapposite. In *Scalise v. Beech Aircraft Corp.*, 276 F. Supp. 58 (E.D. Pa. 1967), the Pennsylvania court found "doing business" jurisdiction over the defendant based on a level of subsidiary control which falls short of the New York "mere department" rule. In *Szantay v. Beech Aircraft Corp.*, 237 F. Supp. 393 (E.D. S.C.), aff'd, 349 F.2d 60 (4th Cir. 1965), the district court specifically held that Beech was " 'present' in South Carolina under the 'minimum contact' standard set out in *International Shoe*." *Id.* at 398. However, in contrast to South Carolina, New York has not yet adopted a "doing business" test coextensive with constitutional due process. *See* note 3 *supra*. Indeed, in the parent-subsidiary context it has specifically shied from doing so. In *Simonson v. International Bank*, 14 N.Y.2d 281, 251 N.Y.S.2d 433, 200 N.E.2d 427 (1964), the New York Court of Appeals considered whether prior New

4. This court finds it significant that when the later *Delagi* court reviewed jurisdictional access to a parent through a subsidiary, it cited to *Royal Bank* and not to *Taca* as an example of fact supporting the "mere department" rule. Moreover, in the same paragraph the *Delagi* court cited as an example of distinct corporate identity sufficient to escape the "mere department" label the situation in *Fergus Motors v. Standard-Triumph Motor Co.*, 130 F. Supp. 780

(S.D.N.Y. 1955). There the corporate structure was very similar to that at bar, and the *Fergus* court held—to the evident approval of the New York Court of Appeals—that "[s]o long as separate identity of the subsidiary is real and formally preserved, the foreign parent corporation must itself be carrying on the business in its own right in the district to subject it to local judicial jurisdiction." *Id.* at 782.

York decisional law using the "doing business" standard ought to be jettisoned in favor of the more liberal "minimum contacts" test, and it declined to do so. The *Simonson* court found in the circumstances that it was "preferable to defer to legislative action" to expand the range of New York's jurisdictional reach. *Id.* at 287, 251 N.Y.S.2d at 438, 200 N.E.2d at 430. The following year the *Taca* court adverted to *Simonson* when it held that having found the subsidiary a "mere department" of the parent, it was not required to decide "whether, under modern Federal and New York law [the foreign corporation] has substantial enough contacts with our State to allow our State to subject [it] to a judgment in personam." *Taca v. Rolls-Royce of England, Ltd., supra,* 15 N.Y.2d at 102, 256 N.Y.S.2d at 132, 204 N.E.2d at 331 (citing *Simonson* ). In 1972, the *Delagi* court once again refused to equate "doing business" with "minimum contacts," and, despite the lack of parent-subsidiary relationship in the facts, felt it necessary to reiterate the "mere department" rule for cases of that type. This Court must conclude that New York has not yet chosen to exercise to the fullest its jurisdictional prerogative under the Constitution.

For the foregoing reasons this Court finds that Beech is not "doing business" within the State of New York for purposes of jurisdiction under N.Y.C.P.L.R. § 301, and therefore the motion to dismiss pursuant to Rule 12(b)(2) is granted.

So ordered.