■ In the Matter of HARTSDALE CANINE CEMETERY, INC., Respondent, v. LOUIS J. LEFKOWITZ, as Attorney-General of the State of New York, Appellant. — Order, Supreme Court, New York County, entered March 10, 1971, unanimously reversed, on the law, the motion to quash subpoena duces tecum denied and the cross motion to compel compliance granted. Appellant shall recover of respondent $30 costs and disbursements of this appeal. The record supports the determination by the Attorney-General to investigate into the affairs of the petitioner, a stock corporation engaged in the ownership, maintenance and operation of an animal cemetery. The petitioner has established a perpetual care fund whereby a purchaser of a plot for the interment of a deceased animal may receive perpetual general grass care and foundation maintenance for the sum of $90, perpetual ivy covering care for $200, and perpetual flower care for $325. The sums received for perpetual care are deposited in a perpetual care trust fund maintained by the Chase Manhattan Bank as trustee. Those plot owners, who have not paid for perpetual care and do not themselves maintain the plots, are required to pay an annual charge of $4 for maintenance of a plot. The petitioner, however, admits that the total cost for annual maintenance and care of a plot is $12.20. Thus, the annual maintenance payment of $4 received from owners of plots not having perpetual care is inadequate to cover the cost of caring for these plots. The petitioner alleges that the deficiency is met by payments from the net income earned by the perpetual care fund held by the Chase Manhattan Bank, but there is no proper explanation of exactly how this is properly accomplished where, as it appears, such income is inadequate for

the purposes intended. As a matter of fact, the perpetual care fund merely earns interest at the rate of 4.4% per annum, and, thus, the interest received on a perpetual care payment of $90 would be inadequate to cover the cost of care and maintenance of a single plot. Thus, it appears that, in violation of the perpetual care agreements, there may be a diversion of the income from the perpetual care fund to make up the deficiency in the cost of the annual maintenance of plots for which a charge of only $4 is made. Furthermore, under the provisions of the trust agreement, the petitioner is obligated to make up any deficiency in moneys required to provide adequate care, and the plot owners are led to believe that their plots will have proper care and maintenance. But there was proof that the care of certain plots in the cemetery had been neglected. If, as appears, the neglect is due to the inadequacy of the income to cover the cost of maintenance and care and to the failure of petitioner to comply with its obligations, there is a misrepresentation of the situation to plot purchasers and owners. By reason of the fact that there are 12,500 plots in this cemetery and that the perpetual care fund amounts to $301,148.40, the proper maintenance of the cemetery and of the perpetual care fund is a matter of such public importance as to justify the interest of the Attorney-General. Under the circumstances, the discretion vested in the Attorney-General was properly exercised to conduct an investigation into the affairs of the petitioner. (See Executive Law, § 63, subd. 12; *Matter of La Belle Creole Int.* v. *Attorney-General of State of N. Y.*, 10 N Y 2d 192; *Matter of A'Hearn* v. *Committee on Unlawful Practice of Law of N. Y. County Lawyers' Assn.*, 30 A D 2d 47, 54, affd. 23 N Y 2d 916; *Matter of Prestige Sewing Stores of Queens* v. *Lefkowitz*, 54 Misc 2d 188.) Concur — Stevens, P. J., Capozzoli, Kupferman, Steuer and Eager, JJ.