OPINION OF THE COURT
Anthony J. Ferraro, J.
Petitioner, Carvel Corporation, makes this application to quash a subpoena duces tecum dated July 26,1978 issued by respondent, Attorney-General of the State of New York. The subpoena sought to be quashed consists of 39 pages *285 containing 99 detailed items covering a period of 8% years and spanning a territory which encompasses 16 States.
Petitioner contends that the subpoena should be quashed because (1) its demands are unreasonably burdensome and would require an expenditure of more than $250,000 and (2) it unnecessarily requires the disclosure of trade secrets.
Respondent responds that (1) the Attorney-General has the power to issue a subpoena to investigate any matter within the purview of article 22 of the General Business Law and an affidavit of an Assistant Attorney-General stating that an investigation is in progress forms a sufficient basis for the issuance of the subpoena, (2) the subpoena calls for materials which are relevant to a proper inquiry and is not unduly burdensome, and (3) the Attorney-General may subpoena trade secrets because the information is protected by the confidentiality mandated by section 343 of the General Business Law.
Section 340 of the General Business Law insofar as here relevant provides as follows:
“1. Every contract, agreement, arrangement or combination whereby
“A monopoly in the conduct of any business, trade or commerce or in the furnishing of any service in this state, is or may be established or maintained, or whereby
“Competition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state is or may be restrained or whereby
“For the purpose of establishing or maintaining any such monopoly or unlawfully interfering with the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state any business, trade or commerce or the furnishing of any service is or may be restrained, is hereby declared to be against public policy, illegal and void * * *
“5. An action to recover damages caused by a violation of this section must be commenced within four years after the cause of action has accrued. The state, or any political subdivision or public authority of the state, or any person *286 who shall sustain damages by reason of any violation of this section, shall recover three-fold the actual damages sustained thereby, as well as costs not exceeding ten thousand dollars, and reasonable attorneys’ fees.”
The pertinent provisions of section 343 of the General Business Law are as follows:
“Whenever it shall appear to the attorney general, either upon complaint or otherwise, that any person or persons, partnership, corporation, company, trust or association shall have engaged in or engages in or is about to engage in any act or practice by this article prohibited or declared to be illegal, or that any person, persons, partnership, corporation, company, trust or association has assisted or participated in any plan, scheme, agreement or combination of the nature described herein, or whenever he believes it to be in the public interest that an investigation be made, he may in his discretion either require or permit such person, persons, partnership, corporation, company, trust or association to file with him a statement in writing under oath or otherwise as to all the facts and circumstances concerning the subject matter which he believes is to be to the public interest to investigate. The attorney general may also require such other data and information as he may deem relevant and may make such special and independent investigations as he may deem necessary in connection with the matter. The attorney general, his deputy, assistant, or other officer designated by him, is empowered to subpoena witnesses, compel their attendance, examine them under oath before himself or a magistrate, a court of record or a judge or justice thereof, and require the production of any books or papers which he deems relevant or material to the inquiry * * * Any officer participating in such inquiry and any person examined as a witness upon such inquiry who shall disclose to any person other than the attorney general the name of any witness examined or any other information obtained upon such inquiry, except as so directed by-the attorney general shall be guilty of a misdemeanor. Such inquiry may upon written authorization of the attorney general be made public. The misdemeanors provided in this section shall be punishable by a *287 fine of not more than one thousand dollars or imprisonment for not more than one year, or both.”
The affidavit of Assistant Attorney-General Serbaroli submitted in opposition to the instant application alleges that the Attorney-General (1) is investigating the possibility that the franchise and trade-mark agreements contain clauses which constitute illegal tying or exclusive dealing arrangements, (2) has reason to believe that rigorous enforcement of the contract provisions amount to buying restrictions which infringe upon freedom of choice, (3) is investigating the legality of Carvel’s charging a $15,000 license fee plus sizeable royalties and windfall profits on supplies which franchised dealers must purchase from Carvel and the legality of fines levied upon dealers who disobey the restrictions, (4) is investigating the legality of various promotions sponsored by Carvel in which the franchise dealers are pressured to participate and over which they have no control and which are costing them funds which they can’t recoup, (5) has reason to believe that Carvel is engaged in horizontal competition with its dealers while exercising vertical control and has engaged in horizontal and vertical price fixing, (6) is investigating the possibility that Carvel is selectively enforcing its sanitary standards to penalize dealers who fail to comply with its buying restrictions, (7) is investigating the possibility that Carvel has unreasonably and without good cause refused to renew numerous franchises and through its horizontal and vertical control over the sale of Carvel stores as well as through fraud and misrepresentation may be manipulating the market in Carvel stores to the detriment of both prospective franchisees and franchised dealers who wish to sell their stores, (8) is investigating fraud and misrepresentation in the sale of franchises as to amount of gross sales and net profits while requiring the licensees to sign a document stating that no representations or guarantees had been made, (9) has reason to believe that dealers have been billed hundreds and thousands of dollars for miscellaneous charges such as “engineering surveys”, “business potential surveys”, “real estate surveys”, “location procurement” and “real estate services” without itemization and without rendering the alleged services, (10) is investigating the *288 possibility that Carvel has engaged in vexatious suits and abuse of the judicial process ancillary to and in furtherance of antitrust and civil rights violations, and (11) is investigating harassing tactics by extraordinary and selective enforcement of the contract provisions and through use of various repressive measures against those who legitimately exercise their constitutional rights.
There is no doubt that the Attorney-General has a right to conduct investigations to determine if section 340 of the General Business Law, commonly referred to as the “Donnelly Act”, prohibiting restraint of trade, is being violated. The section clearly gives the Attorney-General power to commence criminal or civil proceedings to restrain anticompetitive and monopolistic practices whenever he believes it is in the public interest and he may require the production of books and records which are relevant or material to his investigation. Law enforcement agencies have a legitimate right to determine if corporate behavior is consistent with the law and the public interest. The Attorney-General need only show that the documents sought bear a reasonable relation to the subject matter under investigation and to the public purpose to be achieved. The subpoena may not be quashed unless the documents are utterly irrelevant to a proper inquiry or its futility to uncover anything legitimate is obvious. (Matter of Sigety v Hynes, 38 NY2d 260; Matter of Greenthal & Co. v Lefkowitz, 32 NY2d 457; Matter of Hartsdale Canine Cemetery v Lefkowitz, 37 AD2d 548, affd 29 NY2d 702; Matter of Ryan v Lefkowitz, 26 AD2d 604, affd 18 NY2d 977; Matter of La Belle Creole Int., S. A. v Attorney-General of State of N. Y., 10 NY2d 192; Matter of Attorney-General of State of N. Y. [American Research Council — Darvas], 10 NY2d 108; Matter of A’Hearn v Committee on Unlawful Practice of Law of N. Y. County Lawyers’ Assn., 30 AD2d 47, affd 23 NY2d 916; Long Is. Moving & Stor. Assn. v Lefkowitz, 24 AD2d 452.)
Likewise, there is no doubt that a corporation is entitled to the protection of the Fourth Amendment and may not be subjected to unlawful searches and seizures. However, private corporations have been historically subject to broad *289 visitorial power and the State of its incorporation may exercise wide investigative power over them. Such corporations are not entitled to all of the constitutional protections afforded private individuals. As was stated by the United States Supreme Court in the case of United States v Morton Salt Co. (338 US 632, 652): “While [corporations] may and should have protection from unlawful demands made in the name of public investigation * * * corporations can claim no equality with individuals in the enjoyment of a right to privacy * * * They are endowed with public attributes. They have a collective impact upon society, from which they derive the privilege of acting as artificial entities.”
So, while the court must agree that we must not return to the dreaded prerevolutionary writ of assistance issued by the King which violated all principles of individual rights and precipitated the embodiment of appropriate protection in both our Federal and State Constitutions, by the same token, we cannot revert to the feudal system wherein the Lords lavished in luxury within while outside the walls there was wailing in the darkness and gnashing of teeth.
All that is required to meet both State and Federal Constitutions standards is that the subpoenaed materials be relevant to the investigation being conducted and that the subpoena not be overbroad or unreasonably burdensome. (Matter of Far Rockaway Nursing Home v Hynes, 44 NY2d 383, 393.)
The only purpose of the subpoena is to discover and procure evidence sufficient to make a charge not to prove one. (Oklahoma Press Pub. Co. v Walling, 327 US 186, 201.)
The issue before this court is whether the subpoena is of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power. The demand must be definite and the information sought must be reasonably relevant. (United States v Morton Salt Co., supra.) If the subpoena is too onerous it constitutes an unreasonable search. The search is unreasonable when it is out of proportion to the end sought as when the person or corporation served is required to fetch all of his books and records at an exploratory investigation whose purposes *290 and limits can be determined only as it proceeds. (McMann v Securities & Exch. Comm., 87 F2d 377, cert den 301 US 684.) The Attorney-General does not have an arbitrary and unbridled discretion as to the scope of his investigation regardless of the fact that he seeks the information as part of an ongoing investigation. (Matter of La Belle Creole Int., S. A. v Attorney-General of State of N. Y., 10 NY2d 192,196, supra.)
In the instant case, the production of documents embodied in 99 detailed demands, covering a period of eight and one-half years, spanning a territory of 16 States and requiring an expenditure of $250,000 is obviously sweeping in nature and unduly burdensome. An investigation into transactions in 15 other States is patently irrelevant to the avowed purpose of article 22 of the General Business Law to protect the rights of the residents of New York State. An investigation which reaches back eight and one-half years when there is a Statute of Limitations of four years for civil violations and three years for criminal violations seeks information unrelated to any matter properly under inquiry and exceeds the investigatory power. It was not the intended purpose of the Donnelly Act to enable the Attorney-General to chalk up “brownie points” for a thorough and complete investigation. Its sole purpose is to authorize the discovery of evidence to avenge civil rights violated for the past four years and to prosecute criminal acts committed within the past three years. Present over-diligence cannot compensate for past indulgences. Outlawed violations, if any, have been permanently put to rest by the mere incidence of time.
The scope of the subpoena must therefore be limited to a period of four years for civil violations and three years for criminal acts. Only transactions in the State of New York may be investigated and items 11(g), 21, 29, 30, 31, 32, 33, 37, 38, 39, 40, 41(a) and (b), 51, 61, 62, 63, 68(b), 69, 70 and 71 as they relate to demand 62 and item 98 are stricken from the subpoena as not sufficiently related to the purpose of the investigation.
There remains for consideration the question whether Carvel should be required to disclose trade secrets. *291 As a general rule where the disclosure of trade secrets is essential to ascertaining the truth, the privilege must yield. (Drake v Herrman, 261 NY 414; Matter of Minerals & Chems. Philipp Corp. [Panamerican Commodities, S. A.— World Commerce Corp., S. A.], 15 AD2d 432, mot den 12 NY2d 672, cert den 372 US 910; Natta v Zletz, 405 F2d 99; United States v National Steel Corp., 26 FED 603.) In a further effort to shield the trade secrets from the public eye, the Legislature in its wisdom enacted section 343 of the General Business Law which makes it a misdemeanor to reveal information garnered upon the investigation. This constitutes a pledge of good faith on behalf of the State Legislature and the Attorney-General. (Matter of MacNamara, 128 Misc 84, affd 218 App Div 822.) A ruling as to the right to secrecy need not ordinarily be made unless and until the government determines that it will submit the information into evidence at a subsequent trial. (United States v Standard Oil Co. [N. J.], 23 FED 1, 5; United States v International Business Machs. Corp., 67 FED 40, 42.)
However, the court hastens to draw a distinction between trade secrets and a secret formula. Although the secrets of the Carvel manner of doing business may be relevant to the present investigation, and may be properly protected as provided by the above-cited law, the secret formula developed by Carvel over a period of 40 years must be placed in a separate category. Not only is it irrelevant to the subject of the investigation but its preservation would be placed in irretrievable jeopardy. Crimes more serious than misdemeanors have been committed for less valuable worldly goods. The ingenuity to conceive an idea is a unique and precious gift. The right to protect it is sacred. Its full development becomes the heartbeat of free enterprise. Initiative, ingenuity and industry must not be discouraged nor undermined if our Nation is to prosper and our free society is to endure. Carvel Corporation will not be required to surrender its secret formula.